IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BRITTNEY BROWN,

    *Plaintiff,*

v.                                Case No.:  4:25cv419-MW/MJF

ROGER A. YOUNG and
MELISSA TUCKER,

    *Defendants.*
_____/

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

On September 10, 2025, Plaintiff weighed in on the online discourse about Charlie Kirk's murder when she re-posted a statement from a third-party's account as a story on her private Instagram account. Four days later, a user on X called "Libs of TikTok" posted a screenshot of Plaintiff's Instagram story alongside a screenshot of her public LinkedIn profile that listed her employment at the Florida Fish and Wildlife Conservation Commission ("FWC"). The "Libs of TikTok" account urged swift retribution against Plaintiff for the message she shared on her Instagram story. Within less than 24 hours, FWC terminated Plaintiff's employment.

Plaintiff filed suit two weeks after her termination and promptly moved for a preliminary injunction seeking reinstatement, arguing that FWC terminated her in violation of the First Amendment. This Court held a hearing on Plaintiff's motion for preliminary injunction on November 10, 2025.

I

A district court may grant a preliminary injunction if the movant shows: (1) it has a substantial likelihood of success on the merits, (2) it will suffer irreparable injury unless the injunction issues, (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). A "preliminary injunction is an extraordinary and drastic remedy." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983). It should only be granted if "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *Id*. (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).

This Court's analysis focuses on the merits because, typically, if a plaintiff cannot "establish a likelihood of success on the merits," this Court "need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

Plaintiff's motion is based on her claim that FWC terminated her employment in retaliation for speech protected by the First Amendment. But the First Amendment is not absolute. In the public-employment context, "the State's interest as an employer in regulating the speech of its employees differs significantly from those

it possesses in connection with regulation of the speech of the citizenry in general." *Labriola v. Miami-Dade Cnty.*, 142 F.4th 1305, 1309 (11th Cir. 2025) (quoting *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005)). "To accommodate the dueling interests of employee and employer," this Court applies a four-step test that the Eleventh Circuit has derived from *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563 (1968) and *Connick v. Myers*, 461 U.S. 138 (1983). *Id*. Plaintiff must show (1) that her speech involved a matter of public concern, (2) that her free speech interests outweighed Defendants' interest in effective and efficient fulfillment of its responsibilities, and (3) that her speech played a substantial part in her termination. If Plaintiff satisfies her burden on these three steps, the burden shifts to Defendants to show by a preponderance of the evidence that they would have made the same decision even in the absence of Plaintiff's protected speech. This Court will address each step, starting with whether Plaintiff spoke as a citizen on a matter of public concern.

A

As to this first step, Defendants raise several arguments as to why Plaintiff's re-post is not private speech on a matter of public concern. But it's not a close call.

3

First, it is no answer that Plaintiff's Instagram post, itself, is not original content.[1] Courts have long recognized that re-posting memes or other content from other creators, without further comment, is akin to one's own speech. *See Noble v. Cincinnati & Hamilton Cnty. Public Library*, 112 F. 4th 373, 381 (6th Cir. 2024) (holding that individual who re-posted an offensive meme without further commentary spoke on a matter of public concern inasmuch as "[h]is reposted meme communicated his opposition to the BLM protests, which were active throughout the nation at that time.").

---

[1] More specifically, Plaintiff re-posted an Instagram post from the @awhalefact account on Instagram. Among other content, the @awhalefact account posts satirical social commentary from the perspective of a whale. The post that Plaintiff re-posted on her Instagram story said the following:



ECF No. 8-1.

Nor can Defendants immunize themselves by recharacterizing Plaintiff's speech as mere "association" with another's speech. Plaintiff spoke when she re-posted the third-party's speech as her own on her Instagram story. Full stop.

Likewise, there is no contention that Plaintiff's Instagram story amounts to unprotected government speech that owed its existence to her job at FWC or was even remotely related to the work she performed. *See Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006) ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."). Plaintiff's unrebutted declaration demonstrates that her work at FWC focused on monitoring imperiled shorebirds and seabirds, and she primarily performed these duties independently in the field. ECF No. 8-2 ¶¶ 4–5. For good reason, Defendants do not contend that Plaintiff's work as a biological scientist required that she post about current events generally, or Charlie Kirk specifically, on her personal Instagram account.

Relatedly, Plaintiff didn't post from an FWC phone or make her statement at work. Instead, she re-posted a post from her personal phone, on her private Instagram account, on the weekend, while she was on vacation out of state. When Plaintiff spoke by re-posting the post on her Instagram story, she was as far away from work as one could be, literally and figuratively. In short, Plaintiff was speaking as a private citizen and not a government employee when she posted the Instagram story.

5

Defendants also contend that Plaintiff's Instagram story did not touch on a matter of public concern because it conveyed only "personal disdain" and did not contain any "civic commentary." But speech addresses a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. To the extent Defendants suggest speech communicating "personal disdain" falls outside the realm of speech on a matter of public concern, they are mistaken. A public employee's negative opinion about a public figure who has nothing to do with their job is generally not the sort of speech touching on a "personal interest" that garners no protection under the *Pickering* framework. *Compare Rankin v. McPherson*, 483 U.S. 378, 386–87 (1987) (holding that employee was speaking on a matter of public concern when she told a coworker that if another attempt was made on the president's life, she "hope[s] they get him") *with Barr v. Tucker*, 662 F. Supp. 3d 1353 (S.D. Ga. 2023) (denying motion for preliminary injunction and holding that substitute teacher who was terminated after opposing her children's participation in read-aloud program involving a book that included same-sex couples was speaking on a matter of personal interest—namely, concerns regarding her children—rather than a matter of public concern).

It is also no answer that Plaintiff's speech was arguably satirical, sarcastic, or insensitive. "Humor, satire, and even personal invective can make a point about a

6

matter of public concern." *De Ritis v. McCarrigle*, 861 F.3d 444, 455 (3d Cir. 2017). Indeed, "[t]he inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin*, 483 U.S. at 387.

Ultimately, considering the content, form, and context of Plaintiff's speech—a re-post on her private Instagram account that satirically criticized Charlie Kirk's position regarding gun control by juxtaposing his murder with the murder of children in school shootings—Plaintiff has plainly met her burden to demonstrate that she spoke as a citizen on a matter of public concern. Next, this Court considers whether this speech played a substantial part in Plaintiff's termination.

B

As to the third step, again, it's an easy call. Defendants try to twist the explanation for Plaintiff's termination, claiming they fired her based on the public's reaction to her speech and not because of her speech.[2] But that dog won't hunt.

---

[2] Relatedly, Defendants also argue that the termination had nothing to do with Plaintiff's "viewpoint." ECF No. 21 at 8–9. But this assertion is belied by the record, particularly the following two posts on X.com where FWC first noted that Plaintiff's "hateful sentiment" would not be "tolerated," and then FWC doubled down the following day, explaining that Plaintiff's speech was contrary to the agency's "values."

7

Defendants do not identify a basis, independent of Plaintiff's speech, on which to base her termination. The public's reaction to Plaintiff's speech only exists because



ECF No. 8-4.

ECF No. 8-5.

Plaintiff spoke. Moreover, FWC admits in its own public posts on X that FWC fired Plaintiff for her speech. *See* ECF Nos. 8-4 and 8-5.³

This is not a case like *Oakes Farms* where the employer had an alternative basis for termination based on facts independent of the speech at issue. *See Oakes Farms Food & Distribution Servs., LLC v. Adkins*, 154 F.4th 1338, 1346 (11th Cir. 2025) ("That Oakes's speech alerted Adkins to the [food safety] concern does not mean that he was being punished for his viewpoint, just like firing an employee after he confesses to embezzlement is not the same as punishing him for his different perspective on personal use of company funds."). Instead, Plaintiff has clearly

---

³ Specifically, shortly after terminating Plaintiff, FWC explicitly stated that it terminated Plaintiff after learning of her post on social media in the following post on X.com:



ECF No. 8-5.

9

demonstrated that her speech played a substantial part in the termination decision.[4] But this is not the end of the inquiry.

C

As discussed at length on the record at the hearing on Plaintiff's motion, the crux of this case comes down to whether Plaintiff has met her burden on the second step—namely to show that her free speech interest outweighs FWC's interest in the effective and efficient fulfillment of its responsibilities. As Plaintiff's counsel acknowledged on the record at the hearing, weighing both sides' competing interests involves a nuanced, fact-intensive determination. And while Plaintiff asserts the record is sufficient to demonstrate that the scale tips in her favor at this juncture, this Court is not persuaded given the extraordinary affirmative relief Plaintiff now seeks—namely, reinstatement to her previous position. *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.").

In essence, Plaintiff asks this Court to discount Melissa Tucker's unrebutted declaration submitted on Defendant Young's behalf. In it, Defendant Tucker

---

[4] Had Plaintiff met her burden as to each of the first three steps in this analysis, the burden would shift to Defendants to demonstrate that the same decision would have been made even in the absence of Plaintiff's speech. However, Defendants have come forward with no evidence demonstrating that the same decision would have been made to terminate Plaintiff in the absence of her Instagram story.

provides evidence that there was a swift and largely negative reaction from the public concerning Plaintiff's Instagram story which "disrupted agency operations, required diversion of staff resources to manage responses, and raised legitimate concerns about the agency's credibility and public trust." ECF No. 21-1 ¶ 5. While Plaintiff understandably argues that this declaration is short on specifics and largely conclusory, Plaintiff also chose not to seek expedited discovery to depose Defendant Tucker or cross-examine her at the hearing to explore flaws in Defendants' position. Without more, this Court cannot conclude on this sparse record that the public's negative reaction was not disruptive enough to justify the action FWC took. *See Labriola*, 142 F.4th at 1310 (describing the "ample evidence" demonstrating that the public's reaction to the employee's speech "interfered with the regular operation of the enterprise"); *see also Moss v. City of Pembroke Pines*, 782 F.3d 613, 622 (11th Cir. 2015) ("The government's legitimate interest in avoiding disruption does not require proof of actual disruption. Reasonable possibility of adverse harm is all that is required." (citation omitted)). Accordingly, on this limited record, Plaintiff has not met her burden to demonstrate that her free speech interests outweigh her former employer's legitimate interests, and thus she has not demonstrated a substantial likelihood of success on the merits at this early stage of this case.

II

The First Amendment is not without limits. This case requires this Court to determine, among other things, whether a public employee's interest in free speech outweighs her employer's interests in effective and efficient fulfillment of its responsibilities. At this early stage, Plaintiff has not yet demonstrated that her interests tip the scales. Only time will tell if this changes on a more developed record.

For the reasons discussed above, Plaintiff's motion for preliminary injunction, ECF No. 8, is **DENIED**.

**SO ORDERED on November 13, 2025.**

<u>s/Mark E. Walker</u>
**United States District Judge**