UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**BRITTNEY BROWN**,

    Plaintiff,

v.                                      **CASE NO.: 4:25cv419-MW/MJF**

**ROGER A. YOUNG,** in his official capacity
as Executive Director of the Florida Fish
and Wildlife Conservation Commission, and
**MELISSA TUCKER**,
in her individual capacity,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS

Defendants **ROGER A. YOUNG**, in his official capacity as Executive Director of the Florida Fish and Wildlife Conservation Commission ("FWC"), and **MELISSA TUCKER**, in her individual capacity (collectively, "Defendants"), move to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiff Brittney Brown asks this Court to exercise federal jurisdiction over a completed at-will employment separation and to impose ongoing supervision over future disciplinary decisions within a state agency. Her claims arise from FWC's discontinuation of her Other Personal Services ("OPS") appointment following her repost of a satirical social-media message commenting on the violent public shooting of Charlie Kirk. According to the Complaint, third parties identified her as an FWC employee,

publicized her employer information, and generated public criticism targeting both her and the agency. FWC issued public statements distancing itself from the sentiment expressed in her post and ended her OPS appointment.

Brown seeks reinstatement, front pay, back pay, compensatory and punitive damages, declaratory relief, and broad injunctions governing future personnel decisions. Yet the Complaint alleges no ongoing violation of federal law, no continuing employment relationship, no live controversy regarding her speech, and no policy that currently regulates her conduct.

The official-capacity claims fail because the Eleventh Amendment bars the monetary relief she seeks, because she identifies no ongoing violation that could support prospective relief under *Ex parte Young*, and because she lacks standing to obtain forward-looking injunctions. The individual-capacity claim fails because qualified immunity protects Director Tucker: the Complaint does not plausibly allege a constitutional violation, and the law was not clearly established. And even setting immunity aside, the Complaint does not state a First Amendment claim under *Pickering*, *Mt. Healthy*, or Eleventh Circuit precedent.

Because each defect is independently dispositive and no amendment could cure them, the Complaint should be dismissed with prejudice.

**PROCEDURAL AND FACTUAL BACKGROUND**

Brown worked for FWC as a Fisheries & Wildlife Biological Scientist III in the Wildlife Diversity Conservation Section, a role she held for approximately seven years. ECF No. 1 at ¶¶ 11, 14. The termination letter attached to the Complaint confirms that

she occupied an OPS position and that OPS employees are at will, with no right to appeal termination. ECF No. 1, Ex. 1.

Brown alleges that she maintained a private Instagram account accessible only to followers she accepted and that the account had no connection to her FWC employment. ECF No. 1 at ¶¶ 21, 33(F)–(G). She followed the @awhalefact account, which posted satirical and sometimes political commentary about whales and public events. ECF No. 1 at ¶ 22. While on vacation out of state on or about September 10, 2025, Brown used her personal phone to repost to her Instagram "story" a message from @awhalefact about the shooting of Charlie Kirk. ECF No. 1 at ¶¶ 23, 25–26, 33(A). She alleges that the repost was visible only to her private followers and that she did not identify herself as an FWC employee or purport to speak on FWC's behalf. ECF No. 1 at ¶¶ 21, 33(B)–(G).

Several days later, the Libs of TikTok account posted screenshots of Brown's repost and of her LinkedIn profile on X (formerly Twitter), identified her as an FWC employee, and urged that she be fired. ECF No. 1 at ¶¶ 34–37. Brown alleges that this amplification of her repost—rather than the repost itself—led members of the public to connect her speech with FWC. ECF No. 1 at ¶¶ 34–35. As the Complaint itself alleges, Libs of TikTok simply paired screenshots of the repost with Brown's publicly available LinkedIn profile, which openly identified her FWC employment. ECF No. 1 ¶¶ 34–37.

That same evening, FWC issued a public statement on its official X account stating that it did "not condone nor tolerate this type of hateful sentiment" and that it was "actively working towards a swift and immediate resolution regarding this individual's employment." ECF No. 1 at ¶¶ 38–39. The next morning, Brown's supervisors told her

she must choose between resignation and termination, and the Regional Director delivered a termination letter to her home, accompanied by a law-enforcement officer. ECF No. 1 at ¶¶ 40–42 & Ex. 1. Libs of TikTok then posted that Brown had been fired, and FWC released a second X statement explaining that "FWC leadership took swift action, terminating the individual" because her post "made light of the assassination of Charlie Kirk" and was "not in line" with the agency's values. ECF No. 1 at ¶¶ 45–47.

Based on these events, Brown asserts three § 1983 counts: a First Amendment retaliation claim against Young in his official capacity, a First Amendment content- and viewpoint-discrimination claim against Young, and a parallel content- and viewpoint-discrimination claim against Tucker. ECF No. 1 at ¶¶ 67–82, 83–97, 98–118. She seeks reinstatement, back pay, front pay, seniority credit, compensatory and punitive damages, declaratory relief, and broad injunctions regulating future personnel decisions. ECF No. 1 at ¶¶ 69–76, 85–92, 100–104, 118.

## ARGUMENT

### I. THE OFFICIAL-CAPACITY CLAIMS AGAINST YOUNG MUST BE DISMISSED FOR LACK OF JURISDICTION.

Brown's official-capacity claims fail for three independent reasons. First, sovereign immunity categorically bars all forms of monetary relief against Young in his official capacity. Second, she alleges no ongoing violation of federal law that could support prospective relief under *Ex parte Young*. Third, she lacks Article III standing to pursue forward-looking injunctive relief. These defects deprive the Court of subject-matter jurisdiction.

### A. Sovereign immunity bars all forms of monetary relief.

Suits against state officials in their official capacities are suits against the State. The Eleventh Amendment bars suits against states and their officials for retrospective monetary relief absent waiver or abrogation. *Edelman v. Jordan*, 415 U.S. 651, 662–68 (1974). Section 1983 contains no such abrogation. Brown therefore cannot obtain back pay, front pay, seniority credit, compensatory damages, or any other form of retrospective monetary relief from Young in his official capacity. Punitive damages are unavailable in any event. The Eleventh Amendment bars all forms of retrospective monetary relief—including punitive damages—from state officials sued in their official capacities. *Id.* at 663, 668–69.

Because these principles apply squarely to the relief Brown demands, no amendment could convert her official-capacity damages claims into a jurisdictionally sound request.

### B. Brown alleges no ongoing violation capable of supporting prospective relief under *Ex parte Young*.

*Ex parte Young* allows federal courts to enjoin state officials from ongoing violations of federal law. 209 U.S. 123, 159–60 (1908). Brown challenges a single completed act: the termination of her at-will OPS appointment. ECF No. 1 at ¶¶ 40–42 & Ex. 1. This one-time personnel decision cannot support *Ex parte Young* jurisdiction. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337–41 (11th Cir. 1999). The severed employment relationship underscores the absence of any ongoing violation. The Court has already

recognized that Brown's employment with FWC is "fully severed" and that reinstatement is "particularly disfavored." ECF No. 26 at 11. Those observations were made in the Rule 65 context and do not bind the Rule 12(b)(1) analysis, but they are consistent with the conclusion that the Complaint alleges a single completed act, not continuing unlawful conduct.

Because Brown challenges only a past termination, she cannot invoke *Ex parte Young*, and this jurisdictional defect is incurable.

**C.    Brown lacks Article III standing to pursue forward-looking injunctions.**

To obtain forward-looking equitable relief, Brown must allege a real and immediate threat of future injury. She does not. She alleges that FWC has already terminated her employment. ECF No. 1 at ¶¶ 40–42 & Ex. 1. She alleges no continuing employment relationship, no ongoing disciplinary authority, no policy that presently restricts her speech, and no realistic prospect of future enforcement against her. Her assertions of chill and irreparable harm, *see, e.g.*, ECF No. 1 at ¶¶ 56–61, cannot create standing where there is no ongoing or imminent government action against her.

*Summit Medical* confirms that past conduct cannot, by itself, support forward-looking relief under *Ex parte Young*. 180 F.3d at 1336–37. Here, any injury Brown suffered flows from a completed termination decision, not a continuing restraint.

Federal courts also lack authority to supervise state personnel operations through open-ended injunctions. *See Summit Medical*, 180 F.3d at 1341 (no federal-court orders directing state compliance beyond federal-law violations). Brown's request that the Court enjoin any future "content- or viewpoint-based discipline" by FWC would require the

Court to act as a long-term monitor of state personnel decisions, intruding into a domain the Constitution reserves to the States.

Because Brown cannot allege an ongoing violation or a real and immediate threat of future harm, and because the supervisory injunctions she seeks would exceed federal equitable power, amendment of her official-capacity claims would be futile.

## II. THE INDIVIDUAL-CAPACITY CLAIM AGAINST DIRECTOR TUCKER IS BARRED BY QUALIFIED IMMUNITY.

Even if any portion of the official-capacity claims were to proceed, the individual-capacity claim against Defendant Tucker must still be dismissed with prejudice on qualified-immunity grounds. Qualified immunity protects public officials from suit unless the Complaint plausibly alleges both a constitutional violation and that the violation was clearly established at the time. Brown bears the burden on both prongs. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (officials are immune unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known); *see also Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). Her allegations do not satisfy either requirement.

### A. The Complaint does not plausibly allege a First Amendment violation.

Public-employee speech claims are governed by *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983). Even assuming Brown spoke as a private citizen on a matter of public concern, she must plausibly allege that her interest in reposting the meme outweighs FWC's interest in maintaining effective and credible public service.

Her allegations do not support that conclusion. Brown alleges that Libs of TikTok tied her repost to FWC by pairing it with her LinkedIn profile and calling for her to be fired. ECF No. 1 at ¶¶ 34–37. She alleges that FWC responded with an official X statement disavowing the sentiment of her post and promising a "swift and immediate resolution" regarding her employment, followed by a second statement announcing that FWC leadership had taken "swift action, terminating the individual" because her post "made light of the assassination of Charlie Kirk" and was "not in line" with FWC's values. ECF No. 1 at ¶¶ 38–39, 45–47. These allegations describe reputational consequences for FWC and a perceived threat to public trust—precisely the kind of disruption Eleventh Circuit precedent recognizes as tipping the *Pickering* balance in the employer's favor. *See Moss v. City of Pembroke Pines*, 782 F.3d 613, 621–22 (11th Cir. 2015). And *Waters v. Churchill* confirms that public employers may act on reasonable predictions of harm to institutional credibility. 511 U.S. 661, 673–75 (1994) (plurality); *see also Snipes v. Volusia Cnty.*, 704 Fed. App'x 848, 853–54 (11th Cir. 2017) (unpublished) (per curiam) (affirming summary judgment under *Pickering* where officer's racially insensitive social-media posts foreseeably disrupted public trust and operations).

To satisfy the constitutional-violation prong, Brown must also plausibly allege that her repost was a substantial or motivating factor in her termination and that FWC would not have taken the same action absent the speech. *Oakes Farms Food & Distribution Servs., LLC v. Adkins*, 154 F.4th 1338, 1345 (11th Cir. 2025); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). She cannot. The Complaint concedes that she held an at-will OPS appointment terminable for any lawful reason or no reason at all. ECF No. 1,

Ex. 1. It further alleges that FWC acted only after third parties publicized her repost alongside her employer information, demanded her firing, and generated intense public backlash. ECF No. 1 at ¶¶ 34–47. Those allegations foreclose a plausible inference that FWC would have retained her absent the repost; they instead describe a lawful at-will employment decision made in response to an external reputational crisis and concerns about agency credibility. Because the Complaint fails both the *Pickering* balance and *Mt. Healthy* causation, it does not plausibly allege a constitutional violation, and Tucker is entitled to qualified immunity.

      **B.**      **The Complaint does not satisfy the clearly-established-law requirement.**

Although Brown must first plead a constitutional violation, she must also identify clearly established law placing the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). She has not done so. No Supreme Court or Eleventh Circuit decision clearly establishes that a government employer violates the First Amendment by discontinuing an at-will appointment after an employee publicly reposts an assassination-themed meme that triggers reputational harm to the agency. This Court has already described the *Pickering* analysis in this case as "nuanced" and "fact-intensive." ECF No. 26 at 10–11. That characterization confirms the absence of clearly established law: no reasonable official could have known that the Constitution forbade FWC's response to these circumstances. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity therefore applies.

Plaintiff previously relied on *Rankin v. McPherson*, 483 U.S. 378 (1987), and *Hook v. Rave*, No. 4:25-CV-04188-KES, 2025 WL 2720978 (D.S.D. Sept. 24, 2025) (unpublished).

Neither case clearly establishes the law here. *Rankin* involved a truly private workplace remark that never became public or generated agency-linked backlash; it does not control a viral social-media post that third parties immediately tied to FWC. *Hook*—a preliminary TRO issued by a district court outside this Circuit—lacks any precedential force and involved a tenured professor, not an at-will OPS employee. No binding authority holds that terminating an at-will employee in these circumstances violates the First Amendment.

Because Brown cannot identify clearly established law that would have put Tucker on notice that her conduct was unconstitutional, and because that defect cannot be cured by repleading, the individual-capacity claim must be dismissed with prejudice.

### III. THE COMPLAINT FAILS TO STATE ANY FIRST AMENDMENT CLAIM AGAINST EITHER DEFENDANT.

Even apart from sovereign immunity and qualified immunity, the Complaint fails on the merits of Brown's First Amendment theories.

#### A. The Complaint does not plausibly satisfy the *Pickering* standard.

To state a public-employee speech claim, Brown must plausibly allege that her interest in reposting the @awhalefact meme outweighs FWC's interest in maintaining public trust and effective operations. Her allegations do not permit that inference. For the reasons stated in Section II.A, the Complaint's own allegations establish substantial disruption that defeats any plausible *Pickering* claim.

Under the Complaint's own allegations, FWC faced immediate reputational pressure once Brown's repost was tied to the agency, and senior officials responded

promptly. Compl. ¶¶ 38–39, 45–47. The Eleventh Circuit has made clear that a public employer need not prove actual disruption; a reasonable prediction of harm to the agency's effectiveness may justify the employer's interests under *Pickering*. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621–22 (11th Cir. 2015). And *Waters v. Churchill* likewise recognizes that when a public employer reasonably perceives that an employee's speech threatens institutional credibility or effectiveness, it need not wait for actual damage before taking action. 511 U.S. 661, 673–75 (1994) (plurality). Accepting the Complaint's allegations as true, Brown describes the sort of rapid reputational impact that courts have deemed sufficient to implicate a government employer's operational interests under *Pickering*.

In addition, content- and viewpoint-based labels do not create standalone First Amendment causes of action in the public-employment context. The Eleventh Circuit has made clear that public-employee speech claims, regardless of how they are framed, are evaluated under the *Pickering* balancing test. *O'Laughlin v. Palm Beach Cnty.*, 30 F.4th 1045, 1052–53 (11th Cir. 2022). Counts II and III simply repackage the same underlying allegations as Brown's retaliation theory and therefore rise or fall with her *Pickering* claim. Because the Complaint's own allegations do not plausibly tip that balance in her favor, these relabeled claims add nothing and must be dismissed.

Because the Complaint's own allegations show that FWC reasonably perceived reputational harm arising from Brown's speech when linked to the agency, no amendment could transform these facts into a plausible *Pickering* claim.

## B. The Complaint does not plausibly allege *Mt. Healthy* causation.

Alternatively, even if qualified immunity did not apply, the Complaint fails on the merits for the same reason: it does not plausibly allege *Mt. Healthy* causation. See *supra* Section II.A.

## CONCLUSION

The Eleventh Amendment bars all official-capacity claims against Young. Qualified immunity bars the individual-capacity claim against Tucker. And the Complaint does not state a First Amendment claim under *Pickering*, *Mt. Healthy*, or Eleventh Circuit precedent. Because these defects are jurisdictional or substantive and cannot be cured by repleading, the Court should dismiss the Complaint with prejudice. At minimum, and regardless of the Court's resolution of the official-capacity claims, the individual-capacity claim against Director Tucker must be dismissed with prejudice on qualified-immunity grounds. Defendants will separately move to stay discovery.

Date:  November 21, 2025            Respectfully submitted,

*/s/ Taylor H. Greene*
**Taylor H. Greene**
Florida Bar No.: 1011792
**Robert E. Minchin III**
Florida Bar No.: 1033022
**LAWSON HUCK GONZALEZ, PLLC**
101 E. College Avenue, 5th Floor
Tallahassee, FL 32301
taylor@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com
alyssa@lawsonhuckgonzalez.com
leah@lawsonhuckgonzalez.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed with the CM/ECF website and served on November 21, 2025, to all counsel of record.

*/s/ Taylor H. Greene*
**Taylor H. Greene**