UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**BRITTNEY BROWN**,

      Plaintiff,

v.                                                                CASE NO.: 4:25-CV-419-MW/MJF

**ROGER A. YOUNG,** in his official capacity
as Executive Director of the Florida Fish
and Wildlife Conservation Commission, and
**MELISSA TUCKER**,
in her individual capacity,

      Defendants.

_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

Defendants **Roger A. Young**, in his official capacity as Executive Director of the Florida Fish and Wildlife Conservation Commission ("FWC"), and **Melissa Tucker**, in her individual capacity (collectively, "Defendants"), oppose Plaintiff's Motion for Sanctions and state as follows.

## INTRODUCTION

Plaintiff has taken the extraordinary step of accusing Melissa Tucker ("Tucker"), an FWC Division Director with more than twenty years of

service to the agency, of knowingly misleading this Court by claiming personal knowledge that Plaintiff's social media post disrupted FWC operations through "hundreds" of complaints from hostile citizens. Plaintiff's motion, however, strips that accusation of factual context. Public-facing social media activity and direct communications to FWC generated numerous negative responses following Plaintiff's "awhalefact" post, and Tucker executed her declaration based on information then available to her concerning the effect of those events on agency operations. Labeling that declaration "fraudulent" transforms a dispute over evidentiary foundation into an accusation of litigation misconduct.

Plaintiff nevertheless seeks among the most severe sanctions available in federal practice. In an expedited preliminary injunction posture, she asks the Court to strike Defendants' pleadings, impose default-type relief, award back pay against Tucker individually, shift fees, and direct defense counsel to self-report to the Florida Bar. She invokes 28 U.S.C. § 1927, the Court's inherent authority, and fraud on the court doctrine on the premise that the Tucker Declaration was "fraudulent." But each doctrine is narrow and serves a distinct function. Section 1927 reaches only unreasonable and vexatious multiplication of proceedings that causes excess costs. Inherent

2

authority requires a specific finding of bad faith and a direct causal nexus between the misconduct and the sanction. Fraud on the court requires clear and convincing proof of an intentional scheme aimed at corrupting the judicial process. None permits Plaintiff to turn a dispute over evidentiary foundation in an expedited record into a collateral sanctions proceeding seeking case-altering relief.

Plaintiff's motion challenges wording, scope, and foundation that she contends later discovery clarified. That is not the office of sanctions. Sanctions protect the integrity of the judicial process. They do not punish contested testimony or provide a mechanism to revisit an expedited record after discovery yields additional detail. And the Court's inherent powers, including any fraud on the court remedy, must be exercised "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–25 (11th Cir. 2017).

The Tucker Declaration was submitted to oppose Plaintiff's request for emergency relief on a limited record. Plaintiff now attempts to recast later-developed impeachment material as proof of sanctionable misconduct and leverage it into punitive remedies. On this record, Plaintiff does not establish

3

the predicates of any invoked authority: unreasonable multiplication and excess costs under § 1927, a supportable finding of bad faith under inherent authority, or an intentional deception directed at the Court under fraud on the court doctrine. Nor does she identify any compensable litigation harm attributable to the challenged conduct.

The Court should deny the Motion at the threshold. Plaintiff seeks remedies the invoked doctrines do not permit, fails to satisfy their element-by-element requirements, and identifies no but-for harm that could support a compensatory monetary sanction.

## PROCEDURAL AND FACTUAL BACKGROUND

This sanctions dispute arises from a declaration submitted during expedited preliminary injunction proceedings and later examined through ordinary discovery.

Plaintiff moved for a preliminary injunction seeking reinstatement. (ECF No. 8). Defendants opposed that motion and submitted the Declaration of Melissa Tucker. (ECF Nos. 21, 21-1). The Court held a hearing and denied the requested injunction. (ECF No. 26). In its written Order, the Court evaluated the preliminary injunction record as it then existed, including the Tucker Declaration, and concluded that Plaintiff had not carried her burden

4

for expedited relief. (ECF No. 26 at 2–11). The Court further observed that, although Plaintiff criticized the declaration as "short on specifics and largely conclusory," she "chose not to seek expedited discovery" to depose Tucker or otherwise test the declaration before the ruling issued. (ECF No. 26 at 11).

Public discussion of Plaintiff's social media post also occurred on publicly accessible online platforms. The materials attached as Exhibits A-1 through A-6 to the DePriest Declaration and Exhibit B to the Vogler Declaration reflect numerous negative comments drawn from publicly available posts discussing Plaintiff's post and, in some instances, referencing her employment with FWC. Those materials were collected from publicly accessible sources, as reflected in the declarations and the underlying public-facing URL addresses. *See* DePriest Decl. ¶¶ 2–6 & Exs. A-1–A-6; Vogler Decl. ¶¶ 2–6 & Ex. B.

Against that background, later discovery explored the sources of information underlying the Tucker Declaration. Tucker testified that the declaration remained accurate as of her deposition, which undercuts Plaintiff's assertion that it was later shown to be "false in every respect." Tucker Dep. 126:1–6; ECF No. 44 at 6.

She further testified that, when the declaration referred to her "review of the official FWC records," the information she relied upon consisted of communications from George Warthen, which she described as "more phone calls than records," and that she also reviewed an internal policy while preparing the declaration. Tucker Dep. 126:9–25. Read fairly, that explanation does not show, as Plaintiff argues, that no agency "records" existed; it clarifies the shorthand Tucker used to describe information communicated through agency channels. *See* ECF No. 44 at 8. Tucker also testified that, later that same day, Claire Sunquist Blunden separately called to discuss the social-media attention surrounding Plaintiff's post and the concerns it was generating within the supervisory chain. Tucker Dep. 92:18–25; 93:1–12.

Tucker further testified that she was aware that the volume of social media posts and other agency contacts was high and that, based on "the tone of the responses" coming in, she understood Warthen to have expressed concerns about reputational harm and the potential effect on FWC's public-facing work. Tucker Dep. 134:6–12. She also explained that the incoming communications were pulling the Executive Director's office away from other work, a point difficult to square with Plaintiff's assertion that "no

deponent was able to identify even the slightest disruption of agency activities." Tucker Dep. 132:20–23; ECF No. 44 at 13.

The case then proceeded through discovery. Plaintiff pursued depositions and document discovery concerning the agency's response to Plaintiff's post and the basis for the Tucker Declaration. (ECF No. 44 at 5–12). Based on that later-developed record, Plaintiff now contends that certain statements in the Tucker Declaration exceeded Tucker's personal knowledge or overstated the volume of public contacts and internal disruption. (ECF No. 44 at 5–12). Plaintiff filed the present Motion for Sanctions on February 25, 2026. (ECF No. 44).

## GOVERNING LEGAL STANDARDS

Plaintiff invokes three distinct sanctions authorities — 28 U.S.C. § 1927, the Court's inherent power, and fraud on the court doctrine — and gestures toward court-initiated relief under Federal Rule of Civil Procedure 11. Each doctrine carries demanding, doctrine-specific threshold requirements. Sanctions authority must therefore be exercised cautiously and only within the narrow limits recognized by the Supreme Court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991).

### A. 28 U.S.C. § 1927

Section 1927 applies only when an attorney "so multiplies the proceedings in any case unreasonably and vexatiously" that "excess costs, expenses, and attorneys' fees" are incurred. 28 U.S.C. § 1927. The Eleventh Circuit requires conduct that both multiplies the proceedings and is "so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007). The standard is not satisfied by negligence, mistake, or the mere pursuit of weak or unsuccessful arguments. *Id.* at 1241; *see also Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (explaining that "something more than a lack of merit is required" and that bad faith is the touchstone of § 1927 sanctions).

Multiplication is an independent requirement. The movant must identify proceedings that were unreasonably and vexatiously multiplied and demonstrate a financial nexus between the challenged conduct and the excess costs, expenses, or attorneys' fees incurred as a result. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Section 1927 is compensatory rather than punitive. *Id.*

**B.   The Court's Inherent Authority**

Federal courts possess inherent authority to sanction bad faith conduct, but that authority is powerful and carefully confined. *Chambers*, 501

8

U.S. at 44. The Eleventh Circuit requires a specific finding of bad faith before inherent power sanctions may issue. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017). The power exists to protect the integrity of judicial proceedings and ordinarily should be invoked only when the applicable rules do not adequately address the challenged conduct. *Chambers*, 501 U.S. at 50; *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–55 (1988).

Sanctions imposed under inherent authority must be narrowly tailored to the misconduct found. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Any monetary sanction must be compensatory and limited to those fees the innocent party would not have incurred but for the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017).

## C.  Fraud on the Court

Fraud on the court is reserved for conduct that corrupts the judicial machinery itself so that the adjudicative process cannot function impartially. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978). The doctrine applies only to an intentional scheme to defile or improperly influence the judicial process itself, not to ordinary disputes over evidence or credibility.

9

*Id.* Allegations of fraud on the court must be established by clear and convincing evidence.

### D.   Rule 11(c)(3) (Court-Initiated Sanctions)

Federal Rule of Civil Procedure 11 establishes distinct procedures for party-initiated and court-initiated sanctions. A party seeking sanctions must first serve the motion and allow the opposing party twenty-one days to withdraw or correct the challenged filing before the motion may be filed with the Court. Fed. R. Civ. P. 11(c)(2). Because court-initiated sanctions lack that safe harbor opportunity, they are subject to additional procedural protections. *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

Rule 11(c)(3), by contrast, authorizes sanctions only when the Court itself initiates proceedings through an order to show cause. Fed. R. Civ. P. 11(c)(3). A party therefore may not obtain Rule 11 sanctions indirectly by styling a motion under § 1927 or the Court's inherent authority.

Where a movant elects not to proceed under Rule 11(c)(2), the motion must satisfy the distinct requirements of the doctrines invoked rather than the procedural framework governing Rule 11 sanctions.

### E.   Burden and Proportionality

Under each doctrine, the movant bears the burden of establishing every required element. In all events, any monetary sanction must be compensatory and limited to fees that would not have been incurred but for the sanctionable conduct. *Goodyear*, 581 U.S. at 108–09.

## ARGUMENT

### A. Plaintiff's Motion Fails at the Threshold Because It Seeks Relief the Sanctions Doctrines Do Not Permit.

Plaintiff's Motion fails at the threshold because the relief she seeks is unavailable under the sanctions authorities she invokes. Courts routinely deny sanctions motions where the requested remedies exceed the authority conferred by the governing sanctions framework. The Court therefore need not resolve Plaintiff's accusations to dispose of the Motion. A comparison between the relief sought and the limits of § 1927, the Court's inherent authority, and Rule 11 is sufficient. Plaintiff does not proceed under Rule 11(c)(2)'s party-initiated safe harbor procedure, and the Motion therefore cannot obtain Rule 11-type relief indirectly through § 1927 or the Court's inherent authority.

Section 1927 authorizes only "excess costs, expenses, and attorneys' fees" reasonably incurred because counsel "multiplies the proceedings"

11

unreasonably and vexatiously. 28 U.S.C. § 1927; *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). To impose sanctions under § 1927, a court must find that "(1) the attorney engaged in unreasonable and vexatious conduct; (2) the conduct multiplied the proceedings; and (3) the amount of the sanction bears a financial nexus to the excess proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). The statute is therefore compensatory and tightly confined; it "is not a catch-all provision for sanctioning objectionable conduct by counsel." *Id.* Section 1927 addresses the unreasonable multiplication of proceedings during the course of litigation rather than isolated filings or disagreements over evidence. *See Byrne v. Nezhat*, 261 F.3d 1075, 1106–07 (11th Cir. 2001) (explaining that § 1927 targets "the unreasonable and vexatious multiplication of proceedings" and operates differently from Rule 11, which focuses primarily on pleadings).

Accordingly, § 1927 does not authorize striking pleadings, entering default-type relief, imposing back pay, directing professional discipline, or awarding damages untethered to excess costs directly caused by sanctionable multiplication. Nor does the filing of a single opposition brief, without conduct that prolongs or multiplies the litigation, satisfy § 1927's

requirement that counsel "multiply[] the proceedings" unreasonably and vexatiously. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007). Plaintiff's requested remedies therefore fall outside § 1927's scope as a matter of law.

The Court's inherent authority does not supply what § 1927 withholds. Although broader in origin, inherent power remains constrained by the requirement of a specific finding of bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). Any sanction imposed under that authority must bear a direct causal relationship to the misconduct found, and monetary sanctions must be compensatory and limited to the fees the opposing party would not have incurred but for the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017). Litigation-ending measures or punitive monetary awards therefore fall outside the permissible scope of inherent authority sanctions absent a record establishing sanctionable bad faith and but-for causation. *See Goodyear*, 581 U.S. at 108–09; *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017). Plaintiff identifies no conduct capable of meeting that standard.

Her request for back pay illustrates the mismatch. Back pay is a merits remedy dependent on proof of liability. It is not a sanction for litigation conduct, and a sanctions motion is not a vehicle to obtain substantive relief that presupposes success on the underlying claims.

Because none of the invoked doctrines authorizes the relief requested, the Court may deny the Motion without reaching Plaintiff's factual allegations.

## B.   Plaintiff Cannot Satisfy the Substantive Requirements of § 1927 or the Court's Inherent Authority.

Plaintiff cannot satisfy the substantive requirements for sanctions under either 28 U.S.C. § 1927 or the Court's inherent authority. Both doctrines impose demanding threshold elements—multiplication, bad faith, and causation—that the Motion does not establish on this record.

Section 1927 applies only when counsel "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. In this Circuit, sanctions are appropriate only where the challenged conduct rises to the level of bad faith litigation abuse—conduct "so egregious that it is tantamount to bad faith." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582

14

(11th Cir. 1991)). The statute thus imposes a demanding standard. *See Hyde v. Irish*, 962 F.3d 1306, 1311 (11th Cir. 2020). Sanctions under § 1927 require more than disagreement with counsel's litigation choices. The movant must show (1) unreasonable and vexatious multiplication of proceedings, (2) resulting excess costs or fees, and (3) a causal nexus between the multiplication and those excess expenses. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Negligence, mistake, or the pursuit of weak arguments does not satisfy that standard. *Amlong*, 500 F.3d at 1241.

Multiplication is the threshold requirement. Section 1927 addresses litigation conduct that prolongs or expands the proceedings themselves rather than isolated disputes over litigation positions. *See Byrne v. Nezhat*, 261 F.3d 1075, 1106–07 (11th Cir. 2001). A single filing opposing an opponent's motion does not, without more, constitute multiplication within the meaning of the statute. *Amlong*, 500 F.3d at 1239–41. Courts in this Circuit therefore decline to impose sanctions where the challenged conduct reflects ordinary litigation activity rather than a pattern of abusive filings that expands the proceedings. *Peer*, 606 F.3d at 1314–15. Plaintiff identifies no pattern of delay, obstruction, or repetitive filings that expanded this litigation. The Tucker Declaration was submitted in opposition to Plaintiff's

15

request for emergency relief. On this record, that filing does not constitute unreasonable and vexatious multiplication of proceedings within the meaning of § 1927.

Causation independently forecloses relief. Section 1927 permits recovery only of the excess costs, expenses, and attorneys' fees reasonably incurred because of the unreasonable multiplication of proceedings. *Peer*, 606 F.3d at 1314. The movant must demonstrate a financial nexus between the challenged conduct and the excess costs allegedly caused by the multiplication. *Id.* Absent multiplication and excess costs directly caused by that multiplication, § 1927 does not authorize sanctions. The Eleventh Circuit has affirmed denial of sanctions where the alleged misconduct did not produce additional proceedings or measurable excess costs. See, e.g., *Nettles v. Daphne Utilities*, 689 F. App'x 925, 927 (11th Cir. 2017). Plaintiff's Motion likewise identifies no discrete "excess" proceeding or quantifiable cost attributable to the conduct challenged here.

Plaintiff's theory underscores the point. She contends that the Tucker Declaration "delayed the entry of appropriate injunctive relief" by influencing the Court's preliminary injunction ruling. But even accepting that premise for purposes of argument, it does not establish multiplication

16

of proceedings within the meaning of § 1927. The litigation would have proceeded through discovery, dispositive motions, and trial preparation regardless of whether a preliminary injunction issued. A disagreement about whether the Court should have granted interim relief does not transform the filing of a declaration opposing that relief into sanctionable multiplication of the proceedings.

The inherent authority theory is subject to parallel constraints. Sanctions imposed under the Court's inherent power require a specific finding of bad faith. *Barnes v. Dalton*, 158 F.3d 1212, 1214–15 (11th Cir. 1998); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991). Bad faith denotes conduct undertaken for improper purposes or in knowing abuse of the judicial process. *Chambers*, 501 U.S. at 45–46. Any sanction imposed under that authority must bear a direct causal relationship to the misconduct found, and any monetary award must be compensatory and limited to fees that would not have been incurred but for the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017).

Without multiplication and excess costs directly caused by that multiplication, § 1927 sanctions are unavailable as a matter of law. And

17

without a supportable finding of bad faith coupled with but-for causation, inherent authority sanctions likewise cannot issue.

### C. Plaintiff's "Fraud on the Court" Theory Is Doctrinally Unsustainable and, at Most, Identifies an Evidentiary Dispute.

Plaintiff's fraud on the court theory fails as a matter of law. The doctrine is reserved for the rare circumstance in which misconduct corrupts the judicial process itself. To prevail, a movant must establish by clear and convincing evidence an intentional deception directed at the Court—an unconscionable scheme designed to interfere with the judicial machinery. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978). The doctrine does not extend to evidentiary disputes, credibility disagreements, or alleged inconsistencies in testimony. *See Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551–52 (11th Cir. 1985) (holding that even perjury by a party does not constitute fraud on the court absent interference with the normal and impartial operation of the judicial process); *see also Gupta v. U.S. Att'y Gen.*, No. 20-13793, 2021 WL 3011931, at *4 (11th Cir. July 16, 2021) (explaining that only "egregious misconduct—an unconscionable scheme to influence the court's decision"—constitutes fraud on the court).

18

Plaintiff's challenge to the Tucker Declaration does not approach that threshold. The declaration was submitted in opposition to Plaintiff's request for emergency relief and reflected supervisory knowledge and contemporaneous agency communications. Tucker testified that her information concerning the relevant social media posts and complaints received by FWC derived from information Warthen provided to her. Tucker Dep. 141:6–10. She further testified that she lacked personal knowledge regarding those complaints beyond what Warthen communicated to her. Tucker Dep. 141:11–16. Far from establishing fraud, those answers identify the basis of Tucker's knowledge and directly answer Plaintiff's assertion that she had "no personal knowledge whatsoever." *See* ECF No. 44 at 6–7.

The record also reflects that Tucker received related information from Claire Sunquist Blunden as supervisory concerns developed on September 14. Tucker Dep. 92:18–25; 93:1–12. Tucker also explained that when the declaration referenced "official FWC records," the information she relied upon consisted of communications from Warthen, which she characterized as "more phone calls than records." Tucker Dep. 126:9–13. And when asked why she signed the declaration, Tucker gave a straightforward answer:

"Because I took what he said as factual," explaining that she trusted information conveyed by her direct supervisors. Tucker Dep. 141:17–25. Whatever dispute Plaintiff raises regarding evidentiary foundation, that testimony does not constitute clear-and-convincing evidence of an intentional deception directed at the Court.

Plaintiff's challenge to the declaration's reference to "hundreds" of complaints likewise reflects limits of quantification rather than proof of fabrication. Tucker testified that "hundreds" was "just a generalized number." Tucker Dep. 132:2–5. In context, that explanation answers Plaintiff's effort to recast the declaration as though it asserted a precise, auditable count. *See* ECF No. 44 at 9–10. Tucker further testified that, when she checked with Warthen on Monday morning, he reported that calls were still coming in, and she explained that the "citizen contacts" referenced in the declaration included calls, social media posts, and other public-facing communications directed at the agency. Tucker Dep. 130:11–23. Warthen testified that he "wouldn't be able to quantify" whether there were hundreds of complaints and would not have been able to quantify that number at the end of September. Warthen Dep. 35:2–11. He also testified that FWC does not keep phone logs documenting incoming complaints. Warthen Dep.

25:15–16. Together, that testimony clarifies the scope of the communications Tucker was describing and explains why the declaration used a generalized characterization rather than a precise numerical tally.

Nor does Plaintiff identify evidence of the type of misconduct that triggers fraud on the court doctrine, such as fabricated exhibits, altered documents, or concealment or destruction of evidence designed to corrupt the adjudicative process. Her argument instead concerns scope, phrasing, and the degree of specificity associated with supervisory communications. Disputes of that kind, tested through deposition and document discovery, do not satisfy the demanding standard for fraud on the court. Indeed, the Eleventh Circuit has rejected fraud on the court claims even where the alleged misconduct involved perjury, explaining that such conduct does not implicate the doctrine absent interference with the court's ability to perform its impartial adjudicative function. *Travelers*, 761 F.2d at 1551–52.

The sequence Plaintiff describes reflects ordinary litigation development. Discovery explored the basis of a supervisory declaration and elicited additional detail. Later clarification does not retroactively convert the original submission into an intentional scheme to corrupt the judicial process. Declarations from agency personnel further confirm that publicly

21

accessible commentary concerning Plaintiff's post appeared on social media platforms and was later identified and preserved during limited post hoc searches of public-facing content. *See* DePriest Decl. ¶¶ 2–6; Vogler Decl. ¶¶ 2–6. A separate declaration reflects that, at the request of General Counsel Christopher Torres, a supervisory official later reviewed screenshots provided by FWC's Criminal Intelligence Section and confirmed that the screenshots she reviewed originated from public-facing URL addresses. *See* Prowant Decl. ¶¶ 2–4.

Those later declarations therefore reinforce the central point of Plaintiff's challenge: not that the underlying events described in Tucker's declaration were fabricated, but that Plaintiff disputes how Tucker characterized or quantified them. Even accepting Plaintiff's characterization of the testimony, that type of dispute concerns evidentiary foundation and phrasing, not an intentional scheme to deceive the Court. That type of dispute does not satisfy the clear-and-convincing standard required to invoke fraud on the court doctrine.

**D. The Exhibits Undercut Plaintiff's Premise That the Tucker Declaration "Invented" Public Reaction.**

Plaintiff's sanctions theory rests on the assertion that the Tucker Declaration fabricated or materially misrepresented the existence of public reaction to Plaintiff's post and its association with FWC. The exhibits submitted with this Response undermine that premise. Tucker also testified that Kenne Helm, a stakeholder involved in trapping and control of iguanas in South Florida, emailed to complain that FWC had an employee who had made that type of statement. Tucker Dep. 138:15–24. That email illustrates that external stakeholders were contacting the agency regarding Plaintiff's post during the relevant period. Exhibits A-1 through A-6 and Exhibit B likewise contain examples of online commentary discussing Plaintiff's post and, in some instances, referencing her employment with FWC. *See* DePriest Decl. ¶¶ 3–6 & Exs. A-1–A-6; Vogler Decl. ¶¶ 3–6 & Ex. B.

The DePriest and Vogler Declarations reflect that the exemplars reproduced in Exhibits A-1 through A-6 and Exhibit B were identified during February 23, 2026 searches of publicly accessible online content and correspond to posts dating to the period surrounding Plaintiff's "awhalefact" comment and the events addressed in the Tucker Declaration. *See* DePriest Decl. ¶¶ 2–5; Vogler Decl. ¶¶ 2–5. That showing is sufficient for the limited point relevant here: public-facing online discussion of the type

23

referenced in the Tucker Declaration existed during the period relevant to Plaintiff's sanctions allegations.

The exhibits are offered for a narrow purpose. They show that commentary concerning Plaintiff's post appeared on publicly accessible platforms, including Facebook comment threads associated with public posts discussing Plaintiff's "awhalefact" post and, in some instances, her employment with FWC. The DePriest and Vogler Declarations describe the February 23, 2026 searches that identified and preserved those materials, and the Prowant Declaration addresses later review of screenshots provided by FWC's Criminal Intelligence Section. *See* DePriest Decl. ¶¶ 2–6; Vogler Decl. ¶¶ 2–6; Prowant Decl. ¶¶ 2–4. The materials are offered only to authenticate Exhibits A-1 through A-6 and Exhibit B and to show the context in which commentary about Plaintiff's post appeared, not for the truth of any statements in the underlying posts or comments.

Viewed in that limited light, the exhibits rebut the motion's premise that the Tucker Declaration "invented" public reaction. At most, Plaintiff's criticisms concern evidentiary foundation, wording, or scope—matters ordinarily tested through deposition and document discovery. Disputes of that kind do not constitute clear-and-convincing evidence of an intentional

24

scheme to corrupt the judicial process. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).

The exhibits are submitted solely to address Plaintiff's sanctions theory and for no other purpose.

**E.  Plaintiff's Motion Improperly Seeks to Relitigate the Preliminary Injunction Record Through Sanctions Practice.**

Plaintiff's Motion attempts to convert an evidentiary dispute arising from the preliminary injunction record into a sanctions proceeding. After the Court denied Plaintiff's request for reinstatement, Plaintiff now characterizes a supporting declaration as "fraudulent" and seeks sanctions that would effectively reopen the evidentiary foundation of that ruling. The sanctions doctrines she invokes do not authorize that result.

The Tucker Declaration was submitted in response to Plaintiff's request for emergency relief. The Court conducted a hearing, evaluated the record then before it, and denied the requested injunction. (ECF No. 26 at 11). Plaintiff now asks the Court to revisit that same factual ground, not through the ordinary merits process or appellate review, but through sanctions directed at the declarant and counsel. But sanctions authority must be exercised "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501

25

U.S. 32, 44 (1991). Consistent with that limitation, the Court's sanctions power does not provide a vehicle to reopen an expedited preliminary injunction record through a collateral sanctions motion.

The Eleventh Circuit repeatedly emphasizes the narrow scope of sanctions under § 1927. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007). Plaintiff's theory would expand that limited doctrine by treating later-developed factual disagreement as retroactive proof of litigation misconduct. Extending sanctions doctrine in that manner would invite satellite litigation over prior filings and transform routine evidentiary disputes into collateral proceedings. Sanctions are protective; they are not a mechanism for revisiting earlier determinations.

Plaintiff's argument also disregards the settled role of supervisory declarations in federal litigation. Courts routinely accept declarations from officials whose personal knowledge derives from information obtained through their official responsibilities, including review of organizational records and communications received in the ordinary course of supervisory duties, provided the declarant establishes a foundation tied to their role and responsibilities. *See Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (explaining that Rule 56 affidavits must be based on personal knowledge but

may rely on properly supported evidentiary foundations, including records); *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1444 (11th Cir. 1991) (en banc) (recognizing that personal knowledge may derive from review of records or information obtained through official duties); *Carr v. Tatangelo*, 338 F.3d 1259, 1273–74 (11th Cir. 2003) (accepting testimony based on review of investigative materials and information gathered through official responsibilities). *See also Duke v. Nationstar Mortg., L.L.C.*, 893 F. Supp. 2d 1238, 1244–45 (N.D. Ala. 2012) (holding that Rule 56(c)(4)'s personal knowledge requirement is satisfied where a declarant attests that knowledge is based on review of company records). That principle applies with particular force here, where the declaration was submitted in response to a request for preliminary injunctive relief and reflected information conveyed to Tucker in her supervisory capacity concerning agency contacts and public reaction to Plaintiff's post.

Such submissions are not rendered sanctionable by speculation, perceived inconsistencies, or disputes about foundation or phrasing. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 179–80 (1991) (explaining that there was "not a scintilla of evidence" tending to impugn the integrity of the reports

27

and that government records and official conduct are generally accorded a presumption of legitimacy); *Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 900, 903–04 (11th Cir. 2024) (explaining that agency declarations are entitled to a presumption of good faith and that speculation is insufficient to rebut that presumption). Disagreements concerning foundation, specificity, scope, or wording are standard evidentiary and credibility issues for adversarial testing through discovery and briefing, not a basis for sanctions under 28 U.S.C. § 1927, the Court's inherent authority, or the extraordinary fraud on the court doctrine. *See Amlong*, 500 F.3d at 1239–41; *see also Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).

Sanctions doctrine does not permit the Court to revisit an earlier evidentiary record simply because discovery later supplies additional detail. At most, Plaintiff identifies an evidentiary dispute about foundation and characterization—precisely the type of issue resolved through ordinary merits litigation, not through the extraordinary sanctions authorities she invokes. The Motion should therefore be denied on this independent ground.

## F. At Most, Plaintiff Identifies an Evidentiary Dispute.

At most, Plaintiff identifies a dispute over the foundation, phrasing, and scope of statements contained in a sworn declaration. Those objections concern evidentiary weight and credibility, not sanctionable misconduct.

Declarations submitted in expedited proceedings are routinely tested through deposition and document discovery. Personal knowledge in this context includes information learned in an official capacity, including supervisory briefings and contemporaneous agency communications. Even at the summary judgment stage, where evidentiary requirements are more exacting, courts recognize that personal knowledge may arise from information obtained through official duties or review of organizational records. *See* Fed. R. Civ. P. 56(c)(4). Against that backdrop, Plaintiff's objections to the Tucker Declaration sound in evidentiary foundation, not sanctions.

Plaintiff identifies no testimony establishing that any statement in the Tucker Declaration was knowingly false when made. To the contrary, Tucker testified that the declaration remained accurate, that "hundreds" was a generalized estimate, and that she signed the declaration because she trusted information conveyed by her direct supervisors. Tucker Dep. 126:1–6; 132:2–5; 141:17–25. Those facts are inconsistent with knowing falsity. Her

29

criticisms—that certain statements exceeded personal knowledge or overstated events—therefore amount, at most, to arguments about evidentiary foundation and credibility. Such disputes are addressed through cross-examination, documentary comparison, and merits briefing, not through sanctions. The Eleventh Circuit has repeatedly emphasized that sanctions are reserved for serious litigation misconduct, such as deliberate discovery abuse or obstruction of the judicial process, not routine disputes over the interpretation or weight of evidence. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542–43 (11th Cir. 1993) (affirming severe sanctions where parties engaged in a deliberate campaign to conceal discoverable evidence and repeatedly violated discovery obligations).

### G. Even If Some Technical Deficiency Existed, the Requested Sanctions Are Grossly Disproportionate.

Even assuming a statement in the Tucker Declaration could have been phrased with greater precision or supported by additional foundation, the relief Plaintiff seeks bears no proportional relationship to any sanctionable harm cognizable under the governing standards. The requested sanctions would either resolve core merits issues or impose monetary and reputational

30

consequences untethered to any demonstrated but-for injury to the litigation process.

Sanctions imposed under a court's inherent authority must be exercised with restraint and discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). When monetary sanctions are imposed under that authority, they must be compensatory rather than punitive and limited to the fees the opposing party would not have incurred but for the alleged misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017). The Eleventh Circuit likewise emphasizes that inherent power sanctions require a finding of bad faith and conduct that abuses the judicial process. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–25 (11th Cir. 2017); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Section 1927 similarly limits recovery to excess costs incurred because counsel unreasonably multiplied proceedings. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).

The Eleventh Circuit likewise emphasizes that sanctions doctrines impose a demanding threshold designed to capture only serious litigation abuse. Section 1927, for example, applies only where counsel's conduct is so egregious that it is "tantamount to bad faith" and reflects an objective

disregard of the duties owed to the court. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007). That high standard reflects the limited function of sanctions doctrine: to protect the judicial process from abusive litigation practices, not to adjudicate routine factual disputes or disagreements about the interpretation of evidence. Where the challenged conduct reflects ordinary adversarial disagreement rather than bad faith disruption of the litigation process, the extraordinary remedies associated with sanctions are unavailable as a matter of law.

Measured against those standards, Plaintiff's request fails independently on proportionality and causation grounds. The Motion does not identify a discrete litigation expense that would not have been incurred absent the challenged declaration. During discovery, Plaintiff pursued depositions and document discovery concerning the agency's response to Plaintiff's post and the basis for the Tucker Declaration. (ECF No. 44 at 5–12). In that discovery, Warthen testified that FWC does not maintain phone logs documenting incoming complaints. Warthen Dep. 25:15–16. That testimony concerns the agency's recordkeeping practices; it does not identify incremental litigation costs attributable solely to sanctionable conduct. The

32

record therefore reflects adversarial testing of evidence, not but-for prejudice to the judicial process.

An asserted injury to Plaintiff's underlying claims is distinct from the compensable litigation costs that sanctions doctrine addresses. Monetary sanctions imposed under the Court's inherent authority must be compensatory and limited to fees the opposing party would not have incurred but for the alleged misconduct. *Goodyear Tire*, 581 U.S. at 108–09. Back pay, in particular, is a merits remedy tied to liability determinations and cannot be repackaged as a compensatory sanction absent a demonstrated but-for causal link to identifiable excess litigation costs.

Absent demonstrable but-for prejudice and the clear showing of bad faith required for inherent power sanctions, the extraordinary remedies Plaintiff seeks are disproportionate as a matter of law. That mismatch between alleged conduct and requested relief provides an independent basis to deny the Motion.

### H. Plaintiff's Motion Uses Sanctions Practice as Litigation Leverage and Illustrates the Escalation the Doctrine Is Intended to Prevent.

Plaintiff's sanctions initiative arose in contemporaneous correspondence concerning the motion itself and reflects the type of

33

escalation sanctions doctrine is designed to prevent. On February 19, 2026, Plaintiff's counsel transmitted a draft sanctions motion and requested consultations, asking that Defendants "join the Plaintiff in filing a Joint Motion" to strike the Tucker Declaration. Ex. C (Feb. 19, 2026 Email). Plaintiff's counsel also tied the proposed sanctions motion to attorney's fees allegedly incurred in preparing it. Ex. C (Feb. 20, 2026 Email). In the February 20 email, Plaintiff's counsel wrote: "We also devoted significant time to the sanctions motion. Settlement at this point would have to account for those additional attorney's fees." *Id.* On February 23, 2026, Plaintiff's counsel stated that they had "little interest in litigating the sanctions motion through correspondence" and were "more than content with allowing the Court to consider the motion on its own terms." Ex. C (Feb. 23, 2026 Email).

The cited correspondence is offered for the limited purpose of showing the context in which the sanctions motion arose and the manner in which Plaintiff's counsel framed that motion in contemporaneous communications, not to prove or disprove the validity or amount of any claim. *See* Fed. R. Evid. 408(b); *Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co.*, 119 F.3d 1505, 1514 (11th Cir. 1997). The Court should consider the correspondence only for that limited purpose and should draw no inference

regarding the merits of Plaintiff's claims or the value of any possible resolution.

The Court should decline Plaintiff's invitation to expand sanctions doctrine into a collateral dispute untethered to the narrow purposes those doctrines serve. Sanctions, whether under 28 U.S.C. § 1927 or the Court's inherent authority, exist to protect the integrity of judicial proceedings through carefully confined remedies. They are not designed to convert ordinary litigation disagreements into satellite disputes that distort the merits process or exert settlement pressure. The Supreme Court has cautioned that inherent powers must be exercised with restraint and discretion, and the Eleventh Circuit likewise requires a finding of bad faith before inherent-power sanctions may issue. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Barnes v. Dalton*, 158 F.3d 1212, 1214–15 (11th Cir. 1998); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).

This sequence underscores why courts treat sanctions authority as a narrow tool directed at genuine litigation abuse rather than as an ordinary adjunct to hard-fought motion practice. The Eleventh Circuit has emphasized that the principal sanctions mechanisms serve distinct and

35

limited functions: Rule 11 addresses improper filings, while § 1927 targets litigation conduct that unreasonably and vexatiously multiplies proceedings during the course of the case. *See Byrne v. Nezhat*, 261 F.3d 1075, 1106–07 (11th Cir. 2001) (distinguishing Rule 11's focus on pleadings from § 1927's application to conduct that multiplies proceedings during litigation). Rule 11 likewise reflects that concern by prohibiting filings made for an improper purpose, such as to harass or needlessly increase litigation costs. Fed. R. Civ. P. 11(b)(1).

Courts have repeatedly emphasized that sanctions authority is a narrow tool directed at genuine litigation abuse, not a routine mechanism for escalating ordinary adversarial disputes. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–25 (11th Cir. 2017) (reiterating that a court's inherent powers must be exercised with restraint and discretion). That caution reflects a broader structural concern: once sanctions motions become routine tactical instruments, the doctrine ceases to protect the judicial process and instead risks multiplying the very disputes it was designed to prevent.

More broadly, Plaintiff's motion illustrates the escalation sanctions doctrine is intended to prevent. Plaintiff labels a supervisory declaration

36

"fraudulent," accuses a supervisory official and opposing counsel of sanctionable misconduct, and seeks case-altering consequences based on disputes developed through routine discovery. Accepting that theory would expand sanctions doctrine beyond its confined purpose and invite satellite litigation over contested filings and evidentiary disputes. The Eleventh Circuit has cautioned against precisely that expansion by requiring clear findings of bad faith and strictly confining the circumstances under which sanctions may issue. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–41 (11th Cir. 2007); Barnes, 158 F.3d at 1214–15.

Sanctions doctrine protects the judicial process from genuine abuse; it does not transform ordinary adversarial disagreement into collateral proceedings over prior filings. Even if the Court were to conclude that any statement in the Tucker Declaration could have been phrased more precisely, the appropriate course would be to evaluate the evidence in context or permit supplementation, not to impose sanctions absent clear proof of bad faith. Applied as written, the governing standards require denial of the Motion.

## CONCLUSION AND PRAYER FOR RELIEF

Plaintiff invokes the Court's sanctions authority to attack a declaration submitted in an expedited preliminary injunction posture. The discovery record does not establish sanctionable misconduct under 28 U.S.C. § 1927, the Court's inherent authority, fraud on the court doctrine, or Federal Rule of Civil Procedure 11(c)(3). Nor do those authorities permit the case-altering and quasi-merits relief she requests.

The sanctions sought, including litigation-ending measures, back pay, fee shifting beyond but-for limits, and professional referral or compelled self-reporting, extend beyond the permissible scope of the doctrines Plaintiff invokes. Litigation-ending sanctions may not be used to resolve merits issues under the label of sanctions. Back pay is a merits remedy dependent on proof of liability and cannot be repackaged as a compensatory sanction absent a demonstrated but-for causal link to identifiable excess litigation costs. Any fee award must likewise be limited to the expenses that would not have been incurred but for sanctionable conduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017). Section 1927 similarly permits recovery only of excess costs directly caused by unreasonable multiplication of proceedings. 28 U.S.C. § 1927; *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Plaintiff identifies no such but-for litigation costs. Referral or self-

reporting measures likewise require a threshold showing of sanctionable conduct materially implicating the integrity of the judicial process, which is not established on this record.

Even if the Court were to conclude that any statement in the Tucker Declaration could have been phrased with greater precision, that circumstance would not satisfy the governing sanctions standards, which require bad faith rather than mere negligence or litigation error. *See Hyde*, 962 F.3d at 1311 (negligent conduct, standing alone, does not warrant sanctions under a court's inherent powers or § 1927).

Defendants therefore respectfully request that the Court deny Plaintiff's Motion for Sanctions in its entirety, reject any request for relief beyond the scope of the invoked authorities, and decline to initiate proceedings under Federal Rule of Civil Procedure 11(c)(3). Because the Motion rests on record assertions the cited testimony does not support, including the assertion that Tucker had "no personal knowledge whatsoever," ECF No. 44 at 6, and the effort to convert her generalized "hundreds" estimate into a knowingly false precise count, *id.* at 9–10, Defendants further request that, if the Court concludes that Plaintiff or Plaintiff's counsel pursued this sanctions motion in bad faith, it award

Defendants their reasonable expenses and attorneys' fees incurred in responding to the Motion and in connection with the sanctions proceedings, together with such other relief as the Court deems just and proper.

Date: March 11, 2026            Respectfully submitted,

*/s/ Taylor H. Greene*
**Taylor H. Greene**
Florida Bar No.: 1011792
**Robert E. Minchin III**
Florida Bar No.: 1033022
**LAWSON HUCK GONZALEZ, PLLC**
101 E. College Avenue, 5th Floor
Tallahassee, FL 32301
P: (850) 825-4334
taylor@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com
alyssa@lawsonhuckgonzalez.com
leah@lawsonhuckgonzalez.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on March 11, 2026 a true copy was served via CM/ECF and email on all counsel of record.

*/s/ Taylor H. Greene*
**Taylor H. Greene**

## CONCLUSION AND PRAYER FOR RELIEF

This Response complies with the type-volume limitation of Rule 7.1(F), N.D.Fla.Loc.R. This Memorandum contains 7,317 words, excluding the parts of the Response exempted by Rule 7.1(F).