**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**BRITTNEY BROWN**,

Plaintiff,

v. CASE NO.: 4:25-cv-419

**ROGER A. YOUNG,** in his official capacity
as Executive Director of the Florida Fish
and Wildlife Conservation Commission, and
**MELISSA TUCKER**,
in her individual capacity,

Defendants.
______________________________________/

**DEFENDANTS' RESPONSE IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants **Roger A. Young**, in his official capacity as Executive Director of the Florida Fish and Wildlife Conservation Commission ("FWC"), and **Melissa Tucker**, in her individual capacity (collectively, "Defendants"), respectfully oppose Plaintiff's Motion for Summary Judgment under Federal Rule of Civil Procedure 56.

## INTRODUCTION

Defendants Roger A. Young, in his official capacity as Executive Director of FWC, and Melissa Tucker, in her individual capacity, oppose Plaintiff Brittney Brown's Motion for Summary Judgment. On this record, Rule 56 does not permit judgment for Plaintiff. As the movant, Plaintiff must show both the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. She has not done so.

Plaintiff's motion fails first at the Rule 56 threshold. It treats contested propositions as settled and asks the Court to adopt her preferred reading of a record that supports competing reasonable inferences. The evidence concerning the public reaction, whether the repost caused or reasonably threatened disruption to agency operations, what the relevant actors knew, and why the agency acted when it did does not point in only one direction. Rule 56 therefore does not permit the Court to resolve those disputes or draw those inferences in Plaintiff's favor.

The motion also fails on the merits. *Pickering* does not resolve for Plaintiff as a matter of law, causation remains disputed, and Plaintiff cannot turn her challenge to Tucker's earlier declaration into a merits shortcut. Plaintiff repeatedly assumes that if Tucker's use of the word "hundreds" is impeachable, Defendants' broader disruption-and-reaction account

necessarily fails. *See* Pl.'s Mot. Summ. J. at 2–3. It does not. At most, the record reflects disputes about foundation, precision, and knowledge flow—disputes that underscore, rather than eliminate, triable issues concerning public reaction, anticipated disruption, decisionmaker motive, and Tucker's role. The record therefore supports competing inferences about whether Plaintiff's repost itself drove the decision, whether FWC instead responded to the public attribution and ensuing reaction, and whether Defendants would have acted the same way apart from any protected aspect of the speech.

Plaintiff's effort to obtain judgment against Tucker individually fails for an additional reason: the record does not conclusively establish Tucker as the relevant decisionmaker or eliminate qualified immunity, given the disputes concerning her role, authority, knowledge, and implementation conduct.

Plaintiff likewise is not entitled to summary judgment on prospective relief or reinstatement. Even assuming liability arguendo, the present record does not conclusively establish her entitlement to immediate equitable relief.

In the end, Plaintiff's motion asks the Court to do what Rule 56 forbids: resolve a contested record in the movant's favor. Because genuine disputes

of material fact and competing reasonable inferences remain across liability, qualified immunity, and remedy, the motion should be denied.

## PROCEDURAL HISTORY

Plaintiff filed this action on October 6, 2025, asserting claims under 42 U.S.C. § 1983 arising from her termination from FWC. ECF No. 1.

Early in the case, Plaintiff moved for a preliminary injunction seeking reinstatement and other interim relief. ECF No. 8. After briefing and a hearing, the Court denied that request on November 13, 2025. ECF No. 26.

Defendants then moved to dismiss the Complaint in part. ECF No. 29. On December 16, 2025, the Court granted that motion in part and denied it in part. ECF No. 33. The Court dismissed Plaintiff's claims for nominal damages and pre- and post-judgment interest against Young in his official capacity, but allowed Plaintiff's request for prospective equitable relief against Young and her individual capacity claim against Tucker to proceed. *See id.*

The case then proceeded through discovery, including the depositions of Young, Tucker, Warthen, and Yawn. Plaintiff thereafter moved for summary judgment on the remaining claims. ECF No. 43.

## STATEMENT OF MATERIAL FACTS AND

## RESPONSE TO PLAINTIFF'S ASSERTED UNDISPUTED FACTS

This case arises from events over the weekend of September 13–15, 2025, after Plaintiff reposted the "Whale Statement" to her personal Instagram story. The witnesses did not learn the same information at the same time or from the same source. Young testified that he did not become aware of the repost until Saturday evening and then called George Warthen. *See* Young Dep., ECF No. 42-5, at 19:15–23, 20:3–6. Yawn likewise testified that FWC became aware of the post on Saturday, September 13, after a family member contacted Young. *See* Yawn Dep., ECF No. 42-9, at 32:15–25, 33:1–10.

FWC leadership was not monitoring Plaintiff's private Instagram account when the repost was made. Once Young learned of it, he confirmed that Plaintiff was an FWC employee in Tucker's division and understood that she might be an OPS employee, with OPS status confirmed the next day. *See* Young Dep. 10:19–25; 11:9–24. Yawn testified that OPS employees serve at will, have no grievance rights, and may be terminated by the section leader or higher after one year of service. *See* Yawn Dep. 17:8–11, 18:3–21, 19:2–8.

By Sunday, September 14, the repost had moved beyond Plaintiff's private account into a broader public setting. The Court's preliminary injunction order states that Libs of TikTok circulated screenshots of Plaintiff's Instagram story and LinkedIn profile identifying her as an FWC employee and urging public response. See Order Denying Mot. for Prelim. Inj. at 1 (noting public attribution of the repost to Plaintiff's FWC employment). Yawn testified that, by then, Young had been "dealing with this since last night" and was speaking with Shannon Knowles. *See* Yawn Dep. 37:6–8; 46:23–47:6. Young separately testified that Knowles was in the communications office, and Warthen identified her as FWC's community relations and media director. *See* Young Dep. 43:1–7; Warthen Dep. 20:23–21:14.

The record concerning public reaction is material, but it is not as fixed or uniform as Plaintiff's motion suggests. Young testified that by Sunday the agency was receiving what he described as "an extreme amount" of negative input, including phone calls, e-mails, and a "whole slew" of negative notices on social media. *See* Young Dep. 12:5–13:3. He also testified that he could not quantify exactly how many calls, e-mails, or complaints had come in. *See id.* 12:8–25. That testimony supports evidence of public reaction and

reputational concern, but not Plaintiff's effort to recast the record as establishing either no disruption or a precisely measured agency impact.

The record also does not show that all relevant actors possessed the same information or played the same role in the decision process. Tucker's role was more limited than Plaintiff's motion suggests. She testified that the decision had already been made before she became involved and that she understood her role to be carrying out that decision. *See* Tucker Dep., ECF No. 42-6, at 92:6–15; 94:19–95:13.

Warthen's testimony is likewise narrower than Plaintiff's motion suggests. He testified that he did not recall discussing complaint volume with Tucker and did not think he had direct conversations about it with anyone during that period. *See* Warthen Dep., ECF No. 42-8, at 34:20–35:1. That testimony does not erase evidence of public reaction, but it does prevent Plaintiff from recasting complaint volume and knowledge flow as undisputed facts known in precise terms across the decision chain.

The decision process was more layered than Plaintiff suggests. Young testified that he made the termination decision and that, by approximately 5:00 p.m. Sunday, he had directed others to begin preparing the paperwork. *See* Young Dep. 20:3–6, 20:18–24, 21:7–9. Tucker testified that Warthen told

her the decision had already been made and that she understood her role to be carrying out that decision. *See* Tucker Dep. 92:6–15; 94:19–95:13. Yawn likewise testified that she did not participate in the decision, that it had already been made by the time she was contacted, and that Young and Warthen were involved in the decision process. *See* Yawn Dep. 23:9–25; 24:1–8; 45:22–46:7.

The record reflects a more developed sequence of events. Young learned of the repost Saturday night, consulted Warthen, handled public amplification and reaction on Sunday, and by Sunday evening had directed implementation of a termination decision already made. *See* Young Dep. 19:15–23; 20:3–6; Yawn Dep. 37:12–19; 38:2–24. That sequence is more developed than Plaintiff's statement of facts suggests.

The extent of the public reaction before the termination was implemented remains genuinely disputed. Tucker testified that she did not independently verify the precise number or content of complaints and that no one gave her a precise number. *See* Tucker Dep. 131:16–25; 141:6–142:1. And although the Office of Inspector General later compiled a report documenting 38 complaints on Sunday and 12 on Monday, Tucker testified that she received that report only after the termination and did not review it

in detail at the time. *See* Tucker Dep. 110:8–113:2. The record therefore does not establish a single, undisputed measure of the public reaction before the termination was implemented.

The record likewise does not support Plaintiff's assertion that the agency ignored complaints or inquiries. Yawn testified that the communications office handled press inquiries and agency messaging, and the record reflects that FWC issued public statements. *See* Yawn Dep. 25:3–11; 46:23–47:6.

By Monday morning, September 15, the termination process had moved from preparation to implementation. Tucker signed the termination letter and arranged for delivery after the decision had already been made. *See* Tucker Dep. 95:4–13; 102:20–103:8. Yawn testified that termination letters were hand-delivered when possible and that law enforcement was used for security reasons. *See* Yawn Dep. 47:19–25; 48:1–18. Later that day, the Office of Inspector General transmitted the full complaint report and supporting documentation to Tucker. *See* Warthen Dep. Ex. 5, ECF No. 42-8 (email dated Sept. 15, 2025, 1:15 PM).

Accordingly, the summary judgment record does not support Plaintiff's effort to treat these facts as undisputed. The record instead reflects

disputes concerning the extent of the public reaction, Tucker's limited role in implementing a decision made by others, and whether the agency reacted to the content of Plaintiff's repost alone or to its public attribution to FWC and the reaction that followed. That is enough to show that Plaintiff's asserted "undisputed" facts rest on a level of certainty the record does not supply.

## MEMORANDUM OF LAW

### I. Rule 56 Bars Summary Judgment on This Record.

Plaintiff's motion fails at the threshold because Rule 56 does not permit judgment on a record like this one. As the movant, Plaintiff must show both the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And because Plaintiff will bear the burden at trial on the elements of her claims, summary judgment cannot be entered in her favor unless the record shows that Defendants have failed to identify a genuine dispute as to an essential element and that Plaintiff has made the showing Rule 56 requires. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court must draw all reasonable inferences in Defendants' favor and may not weigh conflicting evidence or resolve credibility disputes. *Anderson*, 477 U.S. at 255; *Lane v.*

*Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154–55 (11th Cir. 2012). When the record supports competing reasonable interpretations, summary judgment is inappropriate. *Lane*, 782 F.2d at 1528; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314–15 (11th Cir. 2007); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986).

That standard alone defeats Plaintiff's motion. Plaintiff repeatedly characterizes key propositions as "undeniable," "cannot be disputed," or susceptible to only one conclusion. But the present record is not one-sided. Plaintiff's motion relies heavily on deposition testimony attacking Tucker's declaration and asserting that she lacked personal knowledge of complaint volume and related public reaction. *See* Pl.'s Mot. Summ. J. at 2, 12–15. Even taking that testimony as relevant impeachment material, Rule 56 does not permit the Court to convert it into conclusive findings that Plaintiff's account of disruption, knowledge, motive, or personal participation is the only reasonable one. *See Tippens*, 805 F.2d at 953–54; *Strickland*, 692 F.3d at 1154–55.

The same is true of Warthen's testimony. His inability to quantify complaints or recall discussing complaint volume with Tucker does not

conclusively establish Plaintiff's theory that there was no meaningful public reaction or reasonable basis to anticipate disruption. *See* Warthen Dep. 34:20–35:8. Young, by contrast, testified that the agency was receiving "an extreme amount" of negative input and a "whole slew" of negative social media attention. *See* Young Dep. 12:5–13:3. Rule 56 does not permit the Court to weigh that mixed testimony, resolve the conflict in Plaintiff's favor, or reject reasonable inferences supporting Defendants as the nonmovants. *See Anderson*, 477 U.S. at 255; *Allen*, 495 F.3d at 1314–15.

Nor does the present record resolve the knowledge-flow and decisionmaker issues in Plaintiff's favor as a matter of law. The depositions reflect that Young learned of the repost Saturday evening, confirmed Plaintiff's employment status through Warthen, and made the termination decision before later implementation steps were taken. *See* Young Dep. 19:15–23; 20:3–6, 20:18–24; 21:7–9. Yawn likewise testified that she did not participate in the decision, that it had already been made by the time she was contacted, and that she was instructed to begin the paperwork later on Sunday. *See* Yawn Dep. 23:9–25; 24:1–8. Tucker testified that Warthen informed her the decision had already been made and that she understood her role to be limited to implementation. *See* Tucker Dep. 92:6–15; 94:19–95:1.

That evidence does not compel Plaintiff's narrative that Tucker was the relevant decisionmaker or that she possessed the level of personal involvement and knowledge Plaintiff attributes to her. At minimum, it supports competing inferences about authority, role, and knowledge.

Plaintiff's motion also treats later-developed materials as though they definitively establish what agency personnel knew when the decision was made. They do not. Plaintiff relies on the later Office of Inspector General complaint report documenting 38 complaints on Sunday and 12 on Monday as part of her effort to fix the scope of the public reaction and to argue that Defendants acted without a reasonable basis for anticipating disruption. *See* Pl.'s Mot. Summ. J. at 14–15. But Rule 56 does not require Defendants to accept Plaintiff's later-assembled evidentiary framing as conclusive of what decisionmakers reasonably understood during the decision window. Nor was FWC required to wait for trial-grade certainty before responding to a fast-moving public controversy. A public employer may act on the facts as it reasonably and in good faith understands them at the time, using workplace decisionmaking procedures that need not mirror the evidentiary standards of later litigation. *See Waters v. Churchill*, 511 U.S. 661, 677–78 (1994) (plurality opinion). A later tally may support Plaintiff's argument, but it does not

conclusively negate evidence that decisionmakers were responding to a quickly escalating situation marked by public attribution of the repost to FWC, negative citizen response, and concerns about the agency's public-facing mission.

The record is likewise mixed on whether FWC's response was based solely on the content of Plaintiff's repost, on the agency's reaction to public attribution and backlash, or on some combination of both. That point matters because Plaintiff frames the case as a pure "message" firing designed to tell employees to "praise Charlie Kirk or keep your mouth shut." *See* Pl.'s Mot. Summ. J. at 1. But rhetoric is not evidence, and the record does not compel that single inference. The Court's preliminary injunction order recognized that the repost was publicly linked to Plaintiff's FWC employment through the Libs of TikTok amplification and that FWC terminated Plaintiff within less than twenty-four hours of that public attribution. *See* Order Denying Mot. for Prelim. Inj. at 1. Yawn testified that by Sunday Young had been dealing with the matter since the night before and was in contact with communications personnel as the agency worked through its response. *See* Yawn Dep. 37:6–8; 46:23–47:6. Those facts permit competing reasonable interpretations, which is enough to bar summary judgment.

Plaintiff's motion further overreaches by treating selected deposition concessions as though they eliminate all factual tension. They do not. A witness's inability to quantify complaint volume, later acknowledgment of limited firsthand knowledge, or uncertainty about specific phrasing may all be relevant impeachment material. But Rule 56 does not authorize the Court to convert those points into affirmative findings that Plaintiff is entitled to judgment as a matter of law on *Pickering*, causation, personal participation, qualified immunity, or remedies. To do so, the Court would have to weigh differing testimony across multiple witnesses, resolve credibility-sensitive conflicts, and draw disputed factual inferences in Plaintiff's favor. *Anderson*, *Lane*, *Strickland*, and *Tippens* forbid that. *See Anderson*, 477 U.S. at 255; *Lane*, 782 F.2d at 1528; *Strickland*, 692 F.3d at 1154–55; *Tippens*, 805 F.2d at 953–54.

Plaintiff also cannot obtain summary judgment by collapsing distinct doctrinal inquiries into a single factual storyline. Even if Plaintiff identifies evidence supporting her view of the record, she still must show that no reasonable factfinder could accept Defendants' competing account of disruption, knowledge, motive, implementation, or remedy. She has not done so. The record instead reflects disputed issues concerning the public reaction, the reasonableness of any anticipated operational or reputational

harm, what Young, Warthen, Tucker, and Yawn knew, Tucker's role in carrying out the decision, and whether later-developed evidence altered or merely supplemented the information available during the decision window. Because those questions remain genuinely disputed or inference-dependent, Rule 56 independently bars judgment for Plaintiff.

Accordingly, before the Court reaches *Pickering*, causation, qualified immunity, or remedies, Plaintiff's motion fails for a more basic reason: the summary judgment record is contested in ways that matter. Plaintiff has not carried her burden to eliminate those disputes or establish entitlement to judgment as a matter of law. The motion should therefore be denied under Rule 56 alone.

## II. Plaintiff Is Not Entitled to Summary Judgment on *Pickering* Balancing.

Even if Plaintiff spoke as a citizen on a matter of public concern, she still is not entitled to summary judgment because the *Pickering* balance does not resolve in her favor as a matter of law on this record. The Court must balance Plaintiff's speech interests against FWC's interest in efficiently performing its public functions. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). That inquiry is context-specific, and the government need not wait

until disruption is fully realized before acting. *Connick v. Myers*, 461 U.S. 138, 150–52 (1983).

That principle matters here because Plaintiff's motion tries to recast the issue as whether Defendants proved actual, quantified disruption. That is not the standard. A public employer need not wait for disruption to become fully manifest before acting; where the circumstances support a reasonable belief that the speech will disrupt office operations or working relationships, preemptive action may be justified. *Connick*, 461 U.S. at 152; *Moss v. City of Pembroke Pines*, 782 F.3d 613, 621–22 (11th Cir. 2015). The question, then, is not whether FWC can now produce a mathematically complete tally of every call, e-mail, or complaint. It is whether, viewing the record in Defendants' favor, a reasonable factfinder could conclude that FWC had a substantial interest in responding to speech that had become publicly tied to the agency and generated negative public attention, citizen complaints, reputational concern, and pressure on agency personnel. On this record, the answer is yes.

The Court's preliminary injunction order is also consistent with Defendants' position here. It noted record evidence of "a swift and largely negative public reaction" to Plaintiff's repost, including diversion of agency

resources and concerns about FWC's credibility and public trust, and recognized that avoiding disruption does not require proof of actual disruption. *See* Order Denying Mot. for Prelim. Inj. at 9–11. That ruling does not resolve this motion, but it underscores that Plaintiff is not entitled to judgment as a matter of law on Pickering on this record.

The factual record remains mixed in ways that matter directly to *Pickering*. Young testified that once Plaintiff's repost was publicly attributed to FWC, the agency began receiving what he described as an "extreme amount" of negative input, including calls, e-mails, and social media backlash. *See* Young Dep. 12:5–13:3. He further testified that he was concerned about the effect of the situation on FWC's credibility and ability to maintain public confidence as a public-facing law enforcement agency. *See id.* 35:23–36:9. Yawn likewise testified that, by Sunday, Young had already been dealing with the matter since the night before and was coordinating with communications personnel as the response unfolded. *See* Yawn Dep. 37:6–8; 46:23–47:6. In a setting where discipline, loyalty, and workplace functioning carry heightened weight, that evidence supports a reasonable inference that FWC was responding not to abstract disagreement with Plaintiff's viewpoint, but to the practical institutional consequences of

a fast-moving public controversy. *See Dartland v. Metro. Dade Cnty.*, 866 F.2d 1321, 1323–24 (11th Cir. 1989); *McMullen v. Carson*, 754 F.2d 936, 938–39 (11th Cir. 1985).

Plaintiff's motion does not eliminate that inference. Regardless of any dispute over Tucker's precision concerning complaint volume, Young testified that once Plaintiff's repost was publicly attributed to FWC, the agency began receiving what he described as an "extreme amount" of negative input, including calls, e-mails, and social media backlash, and that he was concerned about the effect on FWC's credibility and public trust. *See* Young Dep. 12:5–13:3; 35:23–36:9. Yawn likewise testified that, by Sunday, Young had already been dealing with the matter since the night before and was coordinating with communications personnel as the response unfolded. *See* Yawn Dep. 37:6–8; 46:23–47:6. Tucker's testimony that she did not independently verify complaint volume, and Warthen's testimony that he could not quantify the number of complaints, therefore do not establish as a matter of law that Defendants lacked a reasonable basis to anticipate operational, reputational, or public trust harm once the repost was publicly tied to FWC and generated negative public reaction. *See* Tucker Dep. 126:9–

13; 141:6–142:1; Warthen Dep. 34:20–35:8. Under *Connick* and *Moss*, that is enough to defeat summary judgment on *Pickering*.

Nor must FWC show that disruption had already fully materialized before it acted. *Connick*, 461 U.S. at 152; *Moss*, 782 F.3d at 621–22. That principle carries added force here because FWC is a statewide public-facing law enforcement agency, and the Eleventh Circuit has recognized that governmental interests in discipline, loyalty, and effective working relationships can carry substantial weight in settings where credibility and command structure matter. *See Dartland*, 866 F.2d at 1323–24; *McMullen*, 754 F.2d at 938–39.

FWC's institutional interests are not theoretical. Once Plaintiff's repost was publicly connected to her FWC employment, the agency had to evaluate the reputational and operational consequences of that association. The Court's preliminary injunction order recognized those concerns. *See* Order Denying Mot. for Prelim. Inj. at 9–11. Plaintiff's contrary evidence does not eliminate them as a matter of law.

Plaintiff also overstates the legal significance of her off-duty status, personal device use, and private account setting. Those facts are relevant to one side of the *Pickering* balance, but they do not end the analysis or compel

Plaintiff's victory as a matter of law. Private or invitation-only social media speech may still involve matters of public concern, *see O'Laughlin v. Palm Beach County*, 30 F.4th 1045, 1051–53 (11th Cir. 2022), but *Pickering* is not a bright-line rule under which off-duty speech on a matter of public concern automatically outweighs the employer's interests. Recent Eleventh Circuit authority confirms as much. In *Labriola v. Miami-Dade County*, the court held that even off-duty speech could yield to the employer's interests where the speech impaired harmony among coworkers, undermined supervisory confidence, generated a large volume of calls, and interfered with day-to-day operations. 142 F.4th 1305, 1310–12 (11th Cir. 2025). Once the repost was amplified publicly and tied to Plaintiff's FWC employment, the setting changed in ways the agency was entitled to consider. The record permits a reasonable inference that the agency's concern was not the mere existence of a private repost, but its public attribution to FWC during a volatile controversy and the resulting reaction. That is enough to preclude summary judgment.

Nor does *Pickering* turn on whether Tucker's declaration later proved imprecise in using the word "hundreds." The question is whether Defendants' interests in avoiding disruption, reputational harm, and erosion

of public trust could reasonably outweigh Plaintiff's speech interests under the circumstances known to the agency. On that question, the record does not point in only one direction.

Plaintiff therefore is not entitled to summary judgment on *Pickering*. Genuine disputes remain concerning the public reaction, the agency's reputational and operational concerns, the information known to relevant officials, and the reasonableness of any predicted disruption. Plaintiff's contrary effort to characterize the decision as resting only on abstract hostility to her viewpoint—and to analogize FWC's response to an unconstitutional heckler's veto, *see* Pl.'s Mot. Summ. J. at 24–25, 28–29—depends on resolving those disputed factual predicates in her favor. Rule 56 does not permit that.

## III. Plaintiff Is Not Entitled to Summary Judgment on Causation.

Plaintiff likewise is not entitled to summary judgment on causation. To prevail on her First Amendment retaliation claim, Plaintiff must establish that her protected speech was a substantial or motivating factor in the adverse action. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). At summary judgment, that means Plaintiff must show that no genuine dispute of material fact exists on that issue and that the record

permits only one conclusion: that Defendants acted because of Plaintiff's protected speech, rather than because of the repost's public attribution to FWC, the reaction that followed, reputational and operational concerns, or other non-viewpoint-based considerations. This record does not permit that conclusion.

Plaintiff's causation theory collapses several events into a single motive. But the record permits a different inference: that FWC responded not simply to speech in the abstract, but to its public attribution to the agency and the consequences that followed. *See* Order Denying Mot. for Prelim. Inj. at 1.

Young's testimony supports that inference. He testified that, once the repost was publicly tied to FWC, the agency faced "an extreme amount" of negative feedback and social media backlash and that he was concerned about its effect on public confidence. *See* Young Dep. 12:5–13:3; 35:23–36:9. A reasonable factfinder could conclude that the agency acted because of that public controversy, not retaliatory animus toward Plaintiff's viewpoint.

Yawn's testimony points the same way. She testified that Young had already been dealing with the issue since the prior evening and that the

decision had already been made by the time she was contacted to begin the termination paperwork. *See* Yawn Dep. 23:9–25; 24:1–8; 37:6–8; 46:23–47:6.

Plaintiff may point to the short time between public attribution and termination as circumstantial evidence. *See* Pl.'s Mot. Summ. J. at 26–27. But evidence permitting an inference of retaliatory motive does not eliminate competing explanations as a matter of law. *See Brannon v. Finkelstein*, 754 F.3d 1269, 1278–79 (11th Cir. 2014); *Smith v. Mosley*, 532 F.3d 1270, 1278–79 (11th Cir. 2008). Here, the chronology supports more than one inference: Plaintiff's inference that Young acted because of Plaintiff's protected viewpoint, and Defendants' inference that Young acted because the repost had been publicly linked to FWC and had created immediate reputational and operational concerns for the agency. Rule 56 does not permit the Court to choose Plaintiff's inference merely because it is plausible.

Nor does Plaintiff establish causation as a matter of law by pointing to testimony that narrows what certain witnesses knew or could quantify. Tucker testified that her information about complaint volume and related issues came largely from Warthen and that she did not independently verify the number of complaints. *See* Tucker Dep. 126:9–13; 141:6–142:1. Warthen testified that he could not quantify the number of complaints and did not

recall discussing complaint volume with Tucker. *See* Warthen Dep. 34:20–35:8. But even if that testimony narrows the precision of Defendants' account of complaint volume and internal knowledge flow, it does not compel the distinct conclusion that retaliatory motive is the only reasonable explanation for the termination decision. At most, it adds another layer of factual complexity to the causation analysis.

The same is true of the decisionmaker evidence. Young testified that he made the termination decision. *See* Young Dep. 20:18–24; 21:7–9. Tucker testified that she was told the decision had already been made and that she understood her role to be implementation. *See* Tucker Dep. 92:6–15; 94:19–95:1. Yawn confirmed that understanding, testifying that she did not participate in the decision and that it had already been made by the time she was instructed to prepare the paperwork. *See* Yawn Dep. 23:9–25; 24:1–8. That evidence cuts against Plaintiff's effort to establish Young's motive as a matter of law through selected statements by subordinate or implementing actors. Because the record reflects a layered decision process, Plaintiff cannot show as a matter of law that Young's decision was substantially motivated by protected speech alone, rather than by the institutional response to the public fallout associated with that speech.

Plaintiff's viewpoint- and content-discrimination themes do not change that result. In the public employment setting, those labels do not eliminate *Pickering* or collapse causation into a content-only inquiry. Plaintiff still must show that no reasonable factfinder could reject her account of motive and that no reasonable employer could have acted based on the publicly attributed controversy and its anticipated institutional consequences. She has not done so. Her content- and viewpoint-discrimination framing therefore does not establish entitlement to summary judgment on Counts II and III any more than it does on Count I. *See* Pl.'s Mot. Summ. J. at 29–31.

Plaintiff therefore is not entitled to summary judgment on causation. The record remains disputed and inference-dependent as to motive.

## IV. Even Assuming Plaintiff Could Establish the Earlier Elements of Her Claim, She Is Not Entitled to Summary Judgment Because Defendants' *Mt. Healthy* Same-Decision Defense Remains Available on This Record.

Even if Plaintiff could establish the earlier elements of her claim, she still would not be entitled to summary judgment because the record does not eliminate Defendants' *Mt. Healthy* same-decision defense. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285–87 (1977). At summary

judgment, Plaintiff cannot prevail unless the record forecloses any reasonable finding that Defendants would have taken the same action based on the publicly attributed controversy, the resulting backlash, and the institutional concerns that followed. It does not.

The same-decision inquiry is distinct from the substantial-motivating-factor inquiry. Even if Plaintiff could show that her repost played some role, Defendants may still prevail by showing that FWC would have reached the same result once the repost was publicly tied to the agency and generated the reaction reflected in this record. Plaintiff's motion treats proof of one issue as dispositive of the other, but *Mt. Healthy* requires a separate inquiry, and the Eleventh Circuit has likewise recognized that a defendant prevails where it shows it would have taken the same action absent the protected conduct. *See Mt. Healthy*, 429 U.S. at 286–87; *Smith*, 532 F.3d at 1278.

This record supports that defense. Young testified that once the repost was publicly linked to FWC, the agency faced "an extreme amount" of negative reaction and that he was concerned about what that meant for FWC. *See* Young Dep. 12:5–13:3; 35:23–36:9. The Court's preliminary injunction order likewise recognized a swift and largely negative public reaction implicating agency concerns about credibility, public trust, and

disruption. *See* Order Denying Mot. for Prelim. Inj. at 9–11. That evidence is enough to preserve a triable *Mt. Healthy* issue because a reasonable factfinder could conclude that, even assuming Plaintiff's repost played a substantial motivating role, FWC still would have reached the same decision once the repost was publicly amplified and tied to the agency.

The timing evidence supports the same conclusion. Young did not learn of the repost until after it had resurfaced publicly, and by the time Yawn was instructed to prepare the termination paperwork, the decision had already been made. *See* Young Dep. 19:15–23; Yawn Dep. 23:9–25; 24:1–8; 37:6–8; 46:23–47:6. That chronology permits a reasonable inference that the agency acted not because the repost existed in isolation, but because it had become publicly tied to FWC and carried institutional consequences.

Tucker's and Warthen's testimony does not undermine that defense. Their inability to quantify complaint volume does not eliminate any issue of material fact that public attribution of the repost to FWC, the negative reaction experienced by agency leadership, and the agency's concern about public trust and operational fallout were sufficient to produce the same decision. *See* Tucker Dep. 126:9–13; 141:6–142:1; Warthen Dep. 34:20–35:8.

Nor can Plaintiff defeat the same-decision defense by arguing that the later Office of Inspector General tally reflected fewer complaints than broader initial characterizations suggested. Tucker testified that she received the OIG report after the termination and did not review it in detail beforehand. *See* Tucker Dep. 110:8–113:2; 112:16–17; 113:1–2. That later report may be relevant to Plaintiff's effort to challenge certain descriptions in the record, but it does not conclusively establish that leadership would have retained Plaintiff had they known the ultimate complaint count would later be compiled differently. To the contrary, the time-sensitive nature of the decision process permits a reasonable inference that the agency acted based on the publicly unfolding controversy and the contemporaneous perception of agency risk, not on a later finalized count.

The decisionmaker evidence further supports preserving the defense. Young testified that he made the termination decision. *See* Young Dep. 20:18–24; 21:7–9. Yawn testified that she did not participate in that decision and was brought in only after it had been made. *See* Yawn Dep. 23:9–25; 24:1–8. Tucker likewise testified that she understood her role to be implementation after being told the decision had already been made. *See* Tucker Dep. 92:6–15; 94:19–95:1. That sequence likewise preserves a triable

same-decision issue. A reasonable factfinder could credit that evidence and conclude that Young, as the relevant decisionmaker, would have made the same decision once Plaintiff's repost had become a public controversy tied to FWC, regardless of narrower disputes about Tucker's phrasing, Warthen's ability to quantify complaints, or later-developed evidentiary refinements.

Plaintiff's motion never eliminates that possibility. Instead, it asks the Court to accept Plaintiff's interpretation of the record and then hold that no reasonable factfinder could conclude Defendants would have acted the same way absent the protected aspect of the speech. But the record does not point in only one direction. A reasonable factfinder could conclude that FWC's response was driven by the perception that the publicly attributed repost had created an immediate institutional problem involving public confidence, agency credibility, and reputational harm. If so, the same-decision defense remains viable, and Plaintiff cannot obtain summary judgment.

Because the present record permits a reasonable finding for Defendants on *Mt. Healthy*, Plaintiff is not entitled to summary judgment even assuming she could establish the preceding elements of her claim.

## V. Plaintiff Is Not Entitled to Summary Judgment Against Tucker Because the Record Does Not Conclusively Establish Personal Participation, and Qualified Immunity Remains Available.

Plaintiff likewise is not entitled to summary judgment against Tucker in her individual capacity because the record does not establish, as a matter of law, that Tucker was the relevant decisionmaker or that qualified immunity is unavailable.

Section 1983 requires personal participation in the alleged constitutional violation. An individual defendant is not liable merely because she held a supervisory position and signed paperwork implementing a decision made by others. Plaintiff instead must prove that Tucker herself caused the asserted constitutional deprivation. At summary judgment, Plaintiff must do more than identify evidence supporting that inference; she must show that no reasonable factfinder could conclude otherwise. This record does not permit that result.

The decisionmaker evidence demonstrates that Plaintiff cannot establish, as a matter of law, that Tucker caused the alleged constitutional deprivation. Young testified that he made the termination decision; Yawn testified that it had already been made by the time she was contacted; and Tucker testified that she understood her role to be implementation because

she was told the decision had already been made by higher-level leadership and was instructed to carry it out. *See* Young Dep. 20:18–24; 21:7–9; Yawn Dep. 23:9–25; 24:1–8; Tucker Dep. 92:6–15; 94:19–95:1. That evidence forecloses summary judgment on personal participation because the Eleventh Circuit distinguishes between officials who have the power to make and effectuate a termination decision and those who do not. *See Quinn v. Monroe County*, 330 F.3d 1320, 1326–27 (11th Cir. 2003); *McCarthy v. City of Cordele*, 111 F.4th 1141, 1154–56 (11th Cir. 2024).

Tucker signed the termination letter and participated in carrying out the termination, but that does not resolve personal participation as a matter of law. A reasonable factfinder could conclude that she implemented a decision already made by Young rather than made it herself. Rule 56 does not permit the Court to treat Plaintiff's contrary inference as conclusively established.

Tucker's knowledge is likewise too mixed to support summary judgment against her. She testified that much of her information about the public reaction, complaint volume, and surrounding circumstances came secondhand, particularly from Warthen, and that she did not independently verify complaint volume. *See* Tucker Dep. 126:9–13; 141:6–142:1. That

testimony may support Plaintiff's challenge to certain descriptions in the record, but it also supports the competing inference that Tucker was not the architect of the agency's response and lacked the firsthand situational knowledge Young possessed. At minimum, a reasonable factfinder could conclude that Tucker acted in a subordinate or implementer capacity based on information communicated by others.

That unresolved factual picture also preserves qualified immunity. Even assuming Plaintiff could establish a constitutional violation, she still would not be entitled to summary judgment unless the law clearly established that an official in Tucker's position—one the record permits a factfinder to view as implementing a termination decision already made by others—violated the Constitution by carrying out that decision under these circumstances. That is an especially demanding showing in the public employment First Amendment context, where qualified immunity ordinarily protects officials applying the fact-specific *Pickering* framework except in the unusual case where the constitutional line is already clear. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982); *Dartland*, 866 F.2d at 1323; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Plaintiff has not made that showing. The record does not conclusively establish that Tucker was the relevant decisionmaker, that she independently assessed complaint volume, public reaction, or agency risk, or that every reasonable official in her position would have understood that implementing the decision violated clearly established law. *Quinn* and *McCarthy* underscore the distinction between an official who implements a decision and one who possesses authority to effectuate it, and this record does not establish as a matter of law that Tucker falls in the latter category. *See Quinn*, 330 F.3d at 1326–27; *McCarthy*, 111 F.4th at 1154–56. Nor does Plaintiff's emphasis on Tucker's stated constitutional reservations resolve the issue. *See* Pl.'s Mot. Summ. J. at 33. An official's recognition that a decision may be legally sensitive or politically controversial is not equivalent to a concession that implementing it is clearly unconstitutional, because qualified immunity turns on objective legal reasonableness, not an official's subjective beliefs about the matter. *See Rushing v. Parker*, 599 F.3d 1263, 1266–67 (11th Cir. 2010). And in the First Amendment employment context, the Eleventh Circuit has recognized that mixed-motive circumstances can themselves reinforce qualified immunity because a reasonable official with both lawful and unlawful motives would not necessarily know that the

termination violated clearly established law. *See Stanley v. City of Dalton*, 219 F.3d 1280, 1296 (11th Cir. 2000). Because *Pickering*, causation, and *Mt. Healthy* remain contested and inference-dependent, Plaintiff cannot show that Tucker's personal liability and loss of qualified immunity are so clear that no reasonable official in her position could have believed her conduct lawful.

The chronology points the same way. Young learned of the repost on Saturday evening, the decision had already been made by the time Yawn was told to begin the paperwork, and Tucker then coordinated implementation. *See* Young Dep. 19:15–23; Yawn Dep. 23:9–25; 24:1–8; 37:6–8; 46:23–47:6; Tucker Dep. 92:6–15; 95:4–13; 102:20–103:8. That sequence supports competing inferences about whether Tucker exercised final decisionmaking authority or instead carried out a direction already given by higher-level leadership.

Plaintiff's motion also overstates the significance of Tucker's later deposition testimony concerning the foundation for her declaration. Even if Plaintiff is correct that Tucker later acknowledged limited firsthand knowledge or imprecise phrasing, those points do not establish as a matter of law that Tucker personally violated clearly established First Amendment law by signing and implementing the termination. The questions whether

Tucker's declaration was overbroad, whether her understanding of the underlying facts was secondhand, and whether she should nevertheless face individual constitutional liability are not the same question. On this record, Plaintiff cannot collapse them into one.

Plaintiff seeks the most aggressive possible ruling against Tucker: not merely that a jury could find against her, but that the Court must do so now as a matter of law. The record does not justify that step. Because the evidence permits a reasonable finding that Tucker implemented, rather than made, the termination decision, and because Plaintiff has not shown that her conduct violated clearly established law under the circumstances presented here, Plaintiff is not entitled to summary judgment against Tucker in her individual capacity.

For that independent reason, the motion should be denied.

## VI. Plaintiff Is Not Entitled to Summary Judgment on Prospective Relief or Reinstatement.

Plaintiff is not entitled to summary judgment awarding prospective equitable relief, including reinstatement, against Young in his official capacity. Even where such relief remains legally available in principle, Plaintiff still bears the burden at summary judgment to establish entitlement

to that remedy as a matter of law on an undisputed record. She has not done so.

The Court's motion to dismiss order narrowed the surviving official capacity claim to prospective equitable relief. *See* Order Granting in Part and Denying in Part Mot. to Dismiss at 1–3. But the fact that prospective relief remains theoretically available does not mean Plaintiff is automatically entitled to it. Reinstatement and related equitable relief still depend on contested legal and factual issues, including liability, the nature of any ongoing violation, and whether the record supports mandatory equitable intervention at this stage. On this record, those issues remain disputed.

As an initial matter, Plaintiff cannot obtain summary judgment on prospective relief because she is not entitled to summary judgment on liability. The same disputes that preclude judgment for Plaintiff on Rule 56, *Pickering*, causation, *Mt. Healthy*, and Tucker-specific issues necessarily foreclose judgment awarding equitable relief. A court cannot properly order reinstatement as a matter of law where the underlying constitutional violation itself remains contested and inference-dependent. That point alone defeats Plaintiff's request.

But even apart from the liability disputes, remedy-specific questions remain unresolved. Plaintiff's request for reinstatement assumes a record that conclusively establishes both an ongoing violation and the appropriateness of immediate equitable intervention. It does not. The Court's earlier order denying preliminary injunctive relief recognized that Plaintiff had not, on the record then before the Court, established entitlement to reinstatement. *See* Order Denying Mot. for Prelim. Inj. at 12. Discovery may have developed the record since then, but it has not eliminated the central factual and legal disputes bearing on equitable relief. At minimum, the record still leaves room for reasonable disagreement about the basis for the termination, the significance of the public controversy that followed the repost, and whether the extraordinary remedy Plaintiff seeks is warranted as a matter of law.

Plaintiff's request for reinstatement also depends on an oversimplified characterization of the alleged injury. Reinstatement may qualify as prospective relief for *Ex parte Young* purposes. *See Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1351–52 (11th Cir. 2014). But availability is not entitlement. Plaintiff still must show that the record conclusively establishes the predicates for immediate equitable relief, and she cannot do so on a

record where liability, motive, and the factual basis for termination remain disputed.

The record also does not eliminate factual questions relevant to feasibility and appropriateness. The same disputes that preclude summary judgment on liability also bear on whether immediate reinstatement would be appropriate in light of the public controversy, the agency's asserted concerns about public trust and operational disruption, and the unresolved nature of the decisionmaking record.

Nor is Plaintiff entitled to summary judgment on broader prospective declaratory or injunctive relief. Even assuming some forward-looking relief may remain available if Plaintiff ultimately prevails, the present record does not permit such relief now while core factual disputes persist concerning why FWC acted, what risks it reasonably perceived, and whether Plaintiff has shown a present ongoing violation rather than the continuing effects of a completed past decision. *See Green v. Mansour*, 474 U.S. 64, 73 (1985).

Finally, Plaintiff cannot obtain summary judgment awarding equitable relief unless the record eliminates all genuine disputes of material fact bearing on that relief and establishes entitlement to that remedy as a matter of law. *See Anderson*, 477 U.S. at 248, 255. She has not done so. The present

record leaves unresolved questions bearing on both liability and remedy, and the Court may not fill those gaps by adopting Plaintiff's preferred reading of disputed facts.

Plaintiff therefore is not entitled to summary judgment awarding reinstatement or any other prospective relief on this record. Plaintiff's motion also separately seeks compensatory, nominal, and punitive damages against Tucker, *see* Pl.'s Mot. Summ. J. at 31–34, but those issues likewise cannot be resolved in Plaintiff's favor as a matter of law given the disputed questions of motive, knowledge, personal participation, reckless or callous disregard, and actual injury. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–10 (1986). To the extent Plaintiff's motion can be read to seek punitive relief beyond Tucker individually, that request fails as a matter of law as well. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

## CONCLUSION

Plaintiff is not entitled to summary judgment. Rule 56 bars judgment on this disputed record; *Pickering*, causation, viewpoint- and content-based motive theories, and *Mt. Healthy* do not resolve in Plaintiff's favor as a matter of law; Tucker's individual liability, qualified immunity, and any claim for compensatory or punitive damages remain unresolved; and Plaintiff has not

established entitlement to reinstatement or other prospective relief. Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment in full and grant any further relief the Court deems just and proper.

Date: March 14, 2026

Respectfully submitted,

*/s/ Taylor H. Greene*

**Taylor H. Greene**
Florida Bar No.: 1011792
**Robert E. Minchin III**
Florida Bar No.: 1033022
**LAWSON HUCK GONZALEZ, PLLC**
101 E. College Avenue, 5th Floor
Tallahassee, FL 32301
taylor@lawsonhuckgonzalez.com
bob@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com
alyssa@lawsonhuckgonzalez.com
leah@lawsonhuckgonzalez.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been filed with the CM/ECF website and served on March 14, 2026, to all counsel of record.

*/s/ Taylor H. Greene*
**Taylor H. Greene**

**CERTIFICATE OF COMPLIANCE**

This Response complies with the type-volume limitation of Rule 7.1(F), N.D.Fla.Loc.R. This Memorandum contains 7,880 words, excluding the parts of the Response exempted by Rule 7.1(F).