UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

|  |  |  |
|---|---|---|
| **BRITTNEY BROWN**, | ) | |
| | ) | |
| | ) | CASE NO.: 4:25-cv-419 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **ROGER A. YOUNG** in his official capacity | ) | |
| as Executive Director of the Florida Fish | ) | |
| and Wildlife Conservation Commission, | ) | |
| and **MELISSA TUCKER**, | ) | |
| in her individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | / | |

# PLAINTIFF'S MOTION TO STRIKE AND EXCLUDE DECLARATIONS AND EVIDENCE ACCOMPANYING DEFENDANTS' RESPONSE TO THE SANCTIONS MOTION

COMES NOW the Plaintiff, by and through her undersigned attorneys, and pursuant to Rules 26(a)(1)(A) and 37(c)(1), Fla.R.Civ.P., moves this Court to strike and exclude the Declarations and social media posts accompanying Defendant's Response [ECF 47] to Plaintiff's Motion for Sanctions [ECF 44] and says:

## **INTRODUCTION**

Pending before the Court is a Motion for Sanctions against the Defendants for filing a fraudulent Declaration – among the most serious issues which can come before a court. [ECF 44]. In an effort to escape those sanctions, Defendants have filed Declarations and purported evidence which are themselves violative of the rules and the orders of this Court. [ECF 47-1, 47-2, 47-3 and associated Exhibits: 47-4 through 47-10]

In a nutshell, Defendants attempt to introduce belated evidence which was never disclosed in any Rule 26 Disclosures (because Defendants never served their Initial Disclosures at any point in this litigation) and which was never produced in discovery (despite express requests for production).

The failure to disclose any of those materials within the time allowed by the Court is inherently prejudicial in any case but was particularly harmful in this case. At the time of the preliminary injunction hearing, Defendants indicated in their Response that they had call logs and other information to prove actual agency disruption. [ECF 21 at 5]. But Defendants never filed that evidence with the Court and never identified a custodian. Accordingly, Plaintiff was left to guess what sort of documentation the Defendants had in their possession. Usually that gap in knowledge would be ameliorated with the service of initial disclosures identifying the relevant witnesses and documents. However that information was never

produced. That left Plaintiff to scramble to learn what she could within the expedited discovery period set by the Court.

According to Defendants' own Declarations, they did not even begin compiling this information until Plaintiff's counsel forwarded a draft motion for sanctions for purposes of consultation. That occurred three months after initial disclosures were to be exchanged and nearly a month after the discovery deadline. It appears on the face of the Declarations that all of the social media posts were either in Defendants' possession or control or were obtainable at the time the Tucker Declaration was filed - and every day since that time. Defendants have offered no explanation why they failed to produce these materials at a time when Plaintiff could avoid the obvious prejudice she now faces in addressing this last-minute information.

## STATEMENT OF FACTS AND PROCEEDINGS

1.    This Court entered its Scheduling and Mediation Order on November 21, 2025. [ECF 28]. That Order set a discovery deadline of January 30, 2026. [ECF 28 at 1, ¶2].

2.    The Scheduling Order also directed the parties to comply with all other deadlines set forth in their Joint Scheduling Report. [ECF 28 at 1-2, ¶3].

3.      The parties' Joint Report on Rule 26(F) Conference was filed on November 20, 2025. [ECF 27]. That Report established December 4, 2025 as the deadline for serving the parties' Initial Disclosures.

4.      Plaintiff timely served her Initial Disclosures; Defendants did not.

5.      Defendants have never served *any* Initial Disclosures in this case.

6.      The Defendants' failure to serve Initial Disclosures was brought to the Court's attention through the filing of the parties' January 2026 Status Report.[1] At that time, Defendants represented that they would serve their Disclosures "immediately":

> Defendants will serve their Rule 26 Initial Disclosures in this case immediately. The parties have consulted regarding the timing of those disclosures.

[ECF 34 at 3, ¶7].

7.      In the February 2026 Status Report, Defendants acknowledged that they had never served their Initial Disclosures. Defendants represented that they had produced all of their responsive documents and identified all of their witnesses through the discovery process. Defendants further represented that there were no undisclosed witnesses. The parties further agreed that discovery had terminated:

---

[1] The Court had ordered the parties to submit comprehensive status reports every thirty (30) days. [ECF 24 at 2, ¶1-B].

Defendants did not separately serve Rule 26(a)(1) initial disclosures. The parties proceeded directly to written discovery and depositions, and Defendants produced responsive documents and identified witnesses through that process. Other than individuals identified in the pleadings and deposed during discovery, no additional witnesses were separately disclosed. Defendants are not aware of any insurance agreement that may satisfy part or all of a judgment in this action. The time period for discovery has expired.

[ECF 41 at 3, ¶7].

8.   The parties had in fact engaged in discovery, including the production of documents. Not surprising, Plaintiff's discovery focused on the alleged complaints and social media outcry which Defendants claimed accompanied her "Whale Statement". The Request for Production directed to Defendant Young included these specific requests:

3.   All Documents concerning the Whale Statement.

4.   All Documents concerning disruption to FWC operations You contend were caused by the Whale Statement.
…
7.   All Documents concerning, referencing, or discussing how "citizen complaints . . . gave rise to a reasonable prediction of disruption" as referenced on page 4 of Your Response in Opposition to Plaintiff's Motion for Preliminary Injunction, Dkt. No. 21.
…
11.   All Documents referenced on page 2 of the Declaration of Melisssa Tucker, Dkt. No. 21-1, stating "Within hours of that association, the agency's communications office began receiving a large volume of calls, emails, and online messages from citizens, volunteers, and partner organizations."

12.   All Documents referenced on page 2 of the Declaration of Melisssa Tucker, Dkt. No. 21-1, stating "Over the next two days,

hundreds of citizen contacts, and multiple media inquiries were received across FWC's public channels."

*See*, Exhibit "1" attached to this Motion.

Similar specific Requests for Production were directed to Defendant Tucker:

14. All Documents reflecting reactions to the Whale Statement.
…
19. All Documents You created, reviewed, or received referencing the Whale Statement, Charlie Kirk, or Libs of TikTok since September 1, 2025.
…

21. All Documents related to complaints You received or reviewed during September 2025 related to FWC employee statements regarding Charlie Kirk.

22. All Documents referenced on page 2 of the Declaration of Melisssa Tucker, Dkt. No. 21-1, stating "Within hours of that association, the agency's communications office began receiving a large volume of calls, emails, and online messages from citizens, volunteers, and partner organizations."

23. All Documents referenced on page 2 of the Declaration of Melisssa Tucker, Dkt. No. 21-1, stating "Over the next two days, hundreds of citizen contacts, and multiple media inquiries were received across FWC's public channels."

*See*, Exhibit "2" attached to this Motion.

9. At no time did Defendants disclose or produce any of the Declarations or social media screen shots attached to their Response to Plaintiff's Motion for Sanctions. That point is incontestable. But, to the extent that Defendants attempt to

Page 6 of 23

contest their compliance with these discovery obligations, Plaintiffs point to the following:

A.     All relevant documents produced by Defendants – including information regarding complaints – were filed along with Plaintiff's Motion for Summary Judgment. It is evident that none of the FWC Facebook posts or Libs of Tik Tok posts attached to the Response were among the documents produced. [ECF 42 (List of Exhibits in Support of Motion) and ECF 42-1 through 42-24].

B.     The Declarations filed by Defendants in opposition to Plaintiff's Motion for Sanctions show that Defendants did not even search for the contested social media screen shots until *after* the discovery deadline and after Plaintiff served her draft Motion for Sanctions:

> On or about March 4, 2026, I was asked by FWC's General Counsel Christopher C. Torres to review the search of public-facing social media provided by FWC's Criminal Intelligence Section. The relevant dates were stated as Saturday, September 13, 2025, through Sunday, September 14, 2025. I was advised to identify, to the best of my ability, any objectively negative comments related to former FWC employee, Brittany Brown, and a post associated with her and the murder of Charlie Kirk ("Libs of Tik Tok").

[ECF 47-1 at 1-2, ¶2 (Declaration of Prowant)]

> On or about February 23, 2026, I was asked by my supervisor, Jessica Pfohl, to conduct a search on public-facing social media, for any comments related to a former employee, Brittany Brown, and a post associated with her and the murder of Charlie Kirk.

[ECF 47-2 at 2, ¶2 (Declaration of Vogler)]

On or about February 23, 2026, I was asked by my supervisor, Jessica Pfohl, to conduct a search on public-facing social media for any comments related to a former employee, Brittany Brown, and a post associated with her and the murder of CharlieKirk.

[ECF 47-3 at 1-2, ¶2 DePriest Declaration].

*See, also*, ECF 47 at 23 ("[T]he exemplars reproduced in Exhibits A-1 through A-6 and Exhibit B were identified during February 23, 2026 searches of publicly accessible online content…").

10.    The Affiants who filed the contested Declarations (Prowant, Vogler and DePriest) were never disclosed as potential witnesses in this case. Again, that is true because Defendants never served Initial Disclosures of any kind. Furthermore, none of those individuals was disclosed as a potential witness or person with knowledge in Defendants' Answers to Interrogatories. [ECF 42-1; 42-2 (Defendants' Answers to Interrogatories)].

11.    The contested information was first disclosed to Plaintiff in connection with the filing of Defendant's Response to the Motion for Sanctions. The CM/ECF system discloses that that filing was made after hours on Friday, March 13, 2026 at 8:04 P.M.

12.    Needless to say, Plaintiff is prejudiced by the previously undisclosed evidence:

A.      Defendants attempt a rehabilitation of the Tucker Declaration by introducing after-acquired, curated social media screenshots that were never disclosed, never relied upon by their witnesses, and never subject to discovery.

B.      The time for conducting discovery has long since expired.

C.      Plaintiff has filed her Motion for Summary Judgment [ECF 43].

D.      There is insufficient time remaining between the date of disclosure and the hearing on Wednesday morning to investigate, rebut, or impeach this information through normal means.

13.    Defendants have not and cannot offer any explanation for their failure to disclose or produce this information before the eve of this important evidentiary hearing.

14.    Plaintiff has incurred the expenses of this Motion.

## MEMORANDUM OF LAW

The days of trial by ambush are supposed to be ancient history. *See*, First Baptist Ferry Pass Inc. v. W. World Ins. Co., 681 F.Supp. 3d 1257, 1266 (N.D. Fla. 2023) ("The primary purpose of the discovery rules is to ensure the parties are 'on notice' of certain information possessed by the opposing party, so as to 'eliminate surprise and trial by ambush.'" (citation omitted)). Here, however, Defendants seek to have this Court rely on third party social media posts that were first disclosed less

than ninety-six hours before the date of this Motion and with a significant evidentiary hearing days away.

Rule 26(a)(1)(A), Fed.R.Civ.P. requires Defendants to disclose the names of their Affiants and the existence of the social medial posts attached to their Declarations even before discovery commenced in the case:

(A)   In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

(i)   the name and, if known, the address and telephone number of each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

(ii)   a copy - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

In addition the Rules require the prompt supplementation of information which becomes known after the initial disclosures are made. *See*, Rule 26(e)(1), Fed.R.Civ.P. ("A party who has made a disclosure under Rule 26(a) - or who has responded to an interrogatory, request for production, or request for admission - must supplement or correct its disclosure or response… in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or

incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process…").

The consequences of failing to make those initial disclosures, or to supplement them when required, is also spelled out in the Rules:

> (1)    Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. …

Rule 37(c)(1), Fed.R.Civ.P.; *See, also*, Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n, Inc., 595 F.3d 1203, 1210 (11th Cir. 2010) (holding that trial judge did not abuse his discretion for excluding evidence not timely disclosed or supplemented); Mitchell v. Ford Motor Co., 318 Fed. Appx. 821, 824 (11th Cir. 2009) ("Rule 37 allows the district court to exclude a witness as a sanction for a Rule 26 violation.").[2]

In addition, the Court is authorized to award Plaintiff her attorney's fees incurred in bringing the Motion. *See*, Rule 37(c)(1)(A), Fed.R.Civ.P. ("[T]he court, on motion and after giving an opportunity to be heard… may order payment of the reasonable expenses, including attorney's fees, caused by the failure…").

---

[2] The exception for undisclosed documents used only for impeachment clearly does not apply here. Defendants do not claim that the documents will be used only for impeachment.

The failure to fully respond to discovery requests is obviously an unacceptable practice. But the harm to the system and to a party's ability to prepare his or her case is obviously greater when there is not even an initial disclosure advising that such evidence may exist:

> Defendant made no Rule 26(a)(2)(C) disclosures at all here, and he certainly did not put the Government on notice of the facts and opinions upon which he expected to testify sufficiently early in the litigation to allow the Government to test those facts and opinions. As such, the opinions are subject to exclusion.

Brown v. CSX Transportation, Inc., No. 8:24-CV-2777-VMC-LSG, 2026 WL 507691 at *2 (M.D. Fla. Feb. 24, 2026) *quoting* United States v. An Easement & Right-of-way Over 1.58 Acres of Land, 343 F.Supp. 3d 1321, 1339 (N.D. Ga. 2018).

The Eleventh Circuit employs a three-part test to determine whether undisclosed evidence should be excluded:

> In reviewing for abuse of discretion a court's exclusion of a non-disclosed witness, we consider "(1) the importance of the testimony, (2) the reasons for the appellant's failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify." (citation omitted).

Cooley v. Great S. Wood Preserving, 138 Fed. Appx. 149, 161 (11th Cir. 2005); *See, also*, Reed v. Complete Credit Sols., Inc., No. 6:21-CV-1276-PGB-RMN, 2023 WL 2931306 at *1 (M.D. Fla. 2023) (same). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." Mitchell v. Ford Motor Co., 318 F. App'x 821, 824 (11th Cir. 2009).

Defendants' own explanation for why they want to introduce this information and what they think it proves is a bit muddled to say the least:

> The materials are offered only to authenticate Exhibits A-1 through A-6 and Exhibit B and to show the context in which commentary about Plaintiff's post appeared, not for the truth of any statements in the underlying posts or comments.

[ECF 47 at 24]. But elsewhere, it becomes clear that they wish to show that the social media opposition to Ms. Brown's Charlie-Kirk political commentary was both numerous and vociferous:

> The materials attached as Exhibits A-1 through A-6 to the DePriest Declaration and Exhibit B to the Vogler Declaration reflect numerous negative comments drawn from publicly available posts discussing Plaintiff's post and, in some instances, referencing her employment with FWC.

[ECF 47 at 24].[3]

Plaintiff spent considerable time attempting to determine the number and content of complaints FWC relied upon in coming to the termination decision. In particular, Plaintiff wished to explore the statement in the Tucker Declaration that

---

[3] The exact number of complaints received is collateral to the main issue in this case. That central issue is whether there was actual agency disruption or an evidence-based reason to believe that disruption would ensue. Nevertheless, the materials proffered by Defendants do address a contested matter and bear on one of the three major misrepresentations Plaintiff has identified in the Tucker declaration (the other two being the lack of personal knowledge and the complete lack of agency disruption).

there had been "hundreds of citizen contacts" concerning the Whale Statement. [ECF 21-1 at 2, ¶5]. Ultimately, Plaintiff learned that there had been slightly more than 50 e-mails and texts directed to the Defendants which could be classified as complaints.[4] Almost all of that information was included in a report prepared by the FWC Office of the Inspector General. [ECF 42-15]. Plaintiff interrogated each of the witnesses closely on that report and the few other texts and e-mails uncovered through discovery. At the close of discovery, Plaintiff had every right to assume that it had access to every shred of evidence Defendants had with respect to third party complaints.[5]

---

[4] Even with the addition of the disputed social media posts from the FWC website, the citizen count is not "hundreds" – or even one hundred. Plaintiff counts only 42 unique posters in Exhibits A-1 through A-6 [ECF 47-4 through 47-9]. When coupled with the number disclosed through discovery – 54 [Tabulated in Plaintiff's Motion for Summary Judgment ECF 43 at 13-14] - the total number of complaints arguably directed at FWC is still in the double digits. Nevertheless, the proffered posts from the Facebook page would serve to double the number of comments previously disclosed by Defendants.

[5] The other category of social media posts concerns messages posted to an account on X maintained by Libs of Tik Tok. [ECF 47-10]. It is difficult to discern what importance those posts have as they do not appear to actually have been directed to the Defendants and none of the Defendants testified that they had accessed the Libs of Tik Tok account. Logically, then, the Libs of Tik Tok posts could not have played any part in Defendants' decision making. Still, Defendants have attached these items in response to a serious Motion for Sanctions. Defendants clearly believe they prove or disprove some material element of the claims or defenses.

Now, Defendants have come up with additional complaints they would rely on to show the social media "context" in which they made the termination decision. Clearly, this information is important to Defendants, is relevant to their theory of the case and is inexplicably missing from any disclosure or discovery response previously offered by the Defendants.

Also missing from the Initial Disclosures – because there were no Disclosures of any kind – was the identity, or even the existence of the three individuals who provided Declarations to allegedly authenticate the various social media posts. Plaintiff has been deprived of the opportunity to depose those Affiants to test their methodology, evaluate the completeness of their work and search for bias. The failure to disclose any information concerning those actors means that their Declarations must be stricken:

> It is undisputed that Plaintiff did not identify Ms. Petrovsky as a witness in her initial disclosures pursuant to Rule 26(a)(1), nor in response to Defendants' interrogatory asking Plaintiff to name any person she believed to have knowledge or information regarding the subject matter of her claims. Rule 26 of the Federal Rules of Civil Procedure requires a party to disclose "each individual likely to have discoverable information" and imposes an ongoing duty to supplement or correct such disclosures. Fed. R. Civ. P. 26(a), (e). If a party fails to comply with the disclosure requirements of Rule 26, then that party is not allowed to use the undisclosed information or witness as evidence on a motion unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).
> …
> While a party need not disclose the "exact extent" of a witness's knowledge, the Court will strike the evidence from that witness unless

it is persuaded that "the subject matter of their knowledge, to the extent [the party was aware]," was timely disclosed or made known to the opposing party during the discovery process. Graley v. TZ Ins. Solutions, LLC, No. 2:14-cv-636-FtM-CM, 2016 WL 4595066, at *4 (M.D. Fla. Sept. 2, 2016). … None of the documents on which Ms. Petrovsky's name appears gives any indication as to the subject matter of her testimony, nor was she even referenced at any deposition. The Report was therefore correct to conclude that the nondisclosure was not harmless.

Calicchio v. Oasis Outsourcing Group Holdings, L.P., 584 F.Supp.3d 1215, 1230, 1231–32 (S.D. Fla. 2021), aff'd, 2022 WL 2761720 (11th Cir. 2022); See, also, F.T.C. v. Nat'l Urological Group, Inc., 645 F.Supp. 2d 1167, 1181 (N.D. Ga. 2008), aff'd, 356 Fed. Appx. 358 (11th Cir. 2009) ("The FTC has offered no justification for its year and a half delay in disclosing Thomas to the defendants, and the court concludes that this delay was harmful and inexcusable. Consequently, the court will not consider Thomas's declaration or its supporting exhibits in any summary judgment proceeding currently before the court.").

The Court must also consider any explanation the Defendants may offer as to why this information was not disclosed, either initially, or in response to the Plaintiff's discovery requests. See, Reed, 2023 WL 2931306 at *1 ("In determining whether the failure to disclose was justified or harmless, we consider the non-disclosing party's explanation for its failure to disclose…."). Here, the Defendants offer no such excuse or explanation in their Response. Nor could they.

The challenged Declarations acknowledge that the proffered social media posts existed prior to the date that Defendant Tucker executed her Declaration and that they were accessible at "public facing" or "publicly accessible" Internet sites.[6] Moreover, the posts on FWC's Facebook page were obviously in the possession and control of the agency at all times and could have been disclosed and produced at any time. *See, generally*, Bear v. Escambia Cnty. Bd. of Cnty. Commissioners, No. 3:19CV4424-MCR-HTC, 2021 WL 12169650 at *4 (N.D. Fla. 2021) (Administrator of Facebook account has possession of that page and can be compelled to produce relevant information). While the Defendants do not control the Libs of Tik Tok X account, their Declarations assert that they are accessible to the public. To the extent that is true, Defendants do not explain why they did not access and disclose the posts during the discovery window.

Plaintiff diligently pursued discovery in this case and recently filed a Motion for Summary Judgment which relied on the information learned. Suddenly, after the parties completed discovery and are well on their way to a merits determination, Defendants proffer brand new evidence – from sources which it always controlled or accessed – in an effort to attack one of Plaintiff's three major arguments directed

---

[6] Defendants do not define "public facing" or "publicly accessible" sites or explain what they mean when they use those terms.

to the Tucker deposition. The prejudice to Plaintiff by these non-disclosures is obvious.

> Nonetheless, the Court highlights that "[a] discovery violation is not harmless if the importance of the information at issue and its late disclosure cause[s] prejudice to the opposing party." Berryman-Dages, 2012 WL 1130074, at *1; see Lips, 350 F. App'x at 340. The documents at issue are various pages of credit reports showing the tradeline in dispute, thus quite possibly integral to this matter. (Docs. 46, 52). Further, as noted above, Defendant indicates the material prejudice such non-disclosures have had on its ability to fully defend its case. (See Doc. 52). Plaintiff, on the other hand, argues nothing to sufficiently establish the contrary. (See Doc. 53).

Reed, 2023 WL 2931306 at *3–4; See, also, F.T.C. v. Nat'l Urological Group, 645 F.Supp. 2d at 1180 ("The FTC's failure to disclose Thomas as a potential witness prevented the defendants from deposing her or anticipating her testimony before expending the significant resources required to file their dispositive motions. Such a failure can hardly be considered harmless."); Calicchio, 584 F. Supp.3d at 1231–32 (Same).

The same conclusion must be reached if the Defendants' lapses are treated as a failure to meet their conventional discovery obligations. Evidence not produced during discovery is excluded from use at trial. See, Rule 26(a), Fed.R.Civ.P. As shown above, the undisclosed social media posts clearly fit within multiple categories of Plaintiff's discovery requests.

To begin with, Defendants cannot escape their discovery burden by suggesting that Plaintiff could have found this same information had she conducted an independent search of the Internet. An independent search would not have answered the question at issue: what did Defendants rely on in deciding to terminate Plaintiff? *Compare*, Hesling v. CSX Transp., Inc., 396 F.3d 632, 643 (5th Cir. 2005) ("We deem CSX's explanation for not disclosing the documents - because … they are allegedly public documents - to be wholly unpersuasive and somewhat dubious."). It is undoubtedly true that Defendants cannot hide behind ambiguities or claim that they did not know what sort of discovery Plaintiff was seeking; Plaintiff could not have been more precise. For instance, what excuse could the Defendants have for not turning over the Libs of Tik Tok information when Plaintiff served the following specific Request:

> 1.    All Documents You created, reviewed, or received referencing the Whale Statement, Charlie Kirk, or Libs of TikTok since September 1, 2025.

Id. ("We deem CSX's explanation for not disclosing the documents - because Hesling did not specifically ask for them… - to be wholly unpersuasive and somewhat dubious.").

Defendants also cannot hide behind the veil of time. It is no excuse to claim that Defendants could not produce these documents because they had not searched the FWC Facebook page until after Plaintiff filed her Motion for Sanctions.

Defendants were obligated to make that search during the active discovery period in response to Plaintiff's specific discovery requests. *Compare*, In re Liquid Toppings Dispensing Sys. ('447) Patent Litig., No. 1:18-MD-02832-KMM, 2021 WL 2410344 at *2–3 (S.D. Fla. 2021) ("Not only were the tests themselves not disclosed within the requisite time frame pursuant to the Court's Scheduling Order, they were not even conducted before expert disclosures were due. Thus, the Court agrees… that admission of the Tollefson's Declaration 'would result in significant prejudice to Plaintiff Kona Ice as it has been precluded from propounding discovery related to the tests, conducting any depositions about the manner in which the test[s] [were] conducted, or employing the services of a rebuttal witness because it did not receive timely notice of this expert.'").

The fact that Defendants produced *some* records concerning complaints (principally those attached to the OIG Report [ECF 42-15]) also does not excuse their failure to produce the Facebook and Libs of Tik Tok information. *Compare*, Chicago Joe's Tea Room, LLC v. Vill. of Broadview, 94 F.4th 588, 607 (7th Cir. 2024) ("While some documents underlying Chicago Joe's claimed damages were provided in a timely manner during discovery, the required computations were not…. Because the Village had not been given timely explanations of any theories those documents might be used to support, it would not have known what additional discovery to pursue to address the documents.").

Under these facts and circumstances, exclusion of the proffered Declarations and social media posts is the proper remedy. *See,* United States v. Rapower-3, LLC, 470 F. Supp.3d 1232, 1253 (D. Utah 2020) (Collecting cases).

## **CONCLUSION:**

These undisclosed and unproduced Declarations and social media print outs must be excluded as a consequence of their non-disclosure and the obvious discovery violations. Plaintiff should be awarded the costs of this Motion pursuant to Rule 37(c)(1)(A), Fed.R.Civ.P.

WHEREFORE, Plaintiff moves this Court to strike and disregard the Declarations of Prowant, Vogler and DePriest [ECF 47-1, 47-2, 47-3] together with all of their associated exhibits and attachments [ECF 47-4 through 47-10]. Plaintiff further prays for an award of her costs.

## **CERTIFICATE OF CONSULTATION**

Plaintiff's undersigned counsel certifies that he has consulted with the Defendants' attorneys via e-mail and has been advised that Defendants oppose the relief sought herein and will file a written response.

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Sanctions has been furnished to TAYLOR HAMPTON GREENE, Esquire [taylor@lawsonhuckgonzalez.com], JASON GONZALEZ [jason@lawsonhuck gonzalez.com] and ROBERT E MINCHIN, III, Esquire [bob@lawsonhuck gonzalez.com], 101 E. College Avenue, 5th Floor, Tallahassee, Florida 32301; and to RHONDA E. PARNELL, Esquire [rhonda.parnell @myfwc.com], Florida Fish and Wildlife Conservation Commission, 620 South Meridian Street, Tallahassee, Florida 32399-1600, by E-Mail this 17th day of March, 2026.


|  |  |
|---|---|
|  | /s/ Gary S. Edinger |
| AMERICAN CIVIL LIBERTIES | GARY S. EDINGER, Esquire |
| FOUNDATION OF FLORIDA, INC. | Florida Bar No. 0606812 |
| CAROLINE A. MCNAMARA | BENJAMIN, AARONSON, EDINGER |
| Florida Bar No. 1038312 | & PATANZO, P.A. |
| DANIEL B. TILLEY | 305 N.E. 1st Street |
| Florida Bar No. 102882 | Gainesville, Florida 32601 |
| MICHELLE MORTON | (352) 338-4440  (Fax) (352) 337-0696 |
| Florida Bar No. 81975 | GSEdinger12@gmail.com |
| SAMANTHA J. PAST |  |
| Florida Bar No. 1054519 |  |
| 4343 W Flagler Street, Ste 400 |  |
| Miami, Florida 33134-1585 |  |
| (786) 363-2738 |  |
| CMcNamara@aclufl.org |  |
| dtilley@aclufl.org |  |
| mmorton@aclufl.org |  |
| spast@aclufl.org |  |

*Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

This Motion complies with the type-volume limitation of Rule 7.1(F), N.D. Fla.Loc.R. This Motion and Memorandum contain 4,698 words, excluding the parts of the Motion exempted by Rule 7.1(F).